In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4029

Firstar Bank, N.A., a National
Banking Association,

Plaintiff-Appellant,

v.

Lawrence J. Faul and Faul Chevrolet,
Incorporated, an Illinois corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4061--Marvin E. Aspen, Chief Judge.

Argued April 19, 2001--Decided June 13, 2001


   Before Flaum, Chief Judge, and Harlington
Wood, Jr., and Rovner, Circuit Judges.

   Flaum, Chief Judge. Firstar Bank
("Firstar"), aided by the Comptroller of
the Currency ("Comptroller") as amicus
curiae, appeals the district court's
dismissal of its suit for lack of
jurisdiction. Firstar argues that the
district court incorrectly held that for
purposes of diversity jurisdiction a
national bank is a citizen of every state
in which it has a branch. For the reasons
stated herein, we reverse and remand.

I.  Background

   Firstar filed a breach of contract
action naming Lawrence J. Faul and Faul
Chevrolet (collectively, "Faul") as
defendants. Federal jurisdiction was
alleged to be present under 28 U.S.C.
sec. 1332. Firstar identified its
principal place of business as Ohio,
while stating that Lawrence Faul is a
citizen of Illinois and Faul Chevrolet
was incorporated and had its principal
place of business in Illinois. The state
identified in Firstar's organization
certificate as the place where its
operations are carried on is also Ohio.
Firstar pled that the amount in
controversy exceeds $75,000.

Faul moved to dismiss, claiming that diversity jurisdiction was lacking because Firstar has branches in Illinois and thus was a citizen of that state. Firstar does in fact maintain forty-five branches in Illinois. Faul's motion was granted. The district relied on a rule first set forth in Connecticut National Bank v. Iacono, 785 F. Supp. 30 (D.R.I. 1992), which held that for diversity purposes a national bank is a citizen of every state where it maintains a branch. Firstar appeals, challenging the correctness of Iacono and the various district court decisions that have followed it.

II. Discussion

This case turns on the interpretation of the jurisdictional statute for national banks, 28 U.S.C. sec. 1348, which states:

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

The question in this case is whether "located" in the second paragraph of the statute refers to every state where a national bank has a branch. Since Iacono answered yes to this query, no appellate court has weighed in on the issue. We have noted in passing the existence of Iacono's holding, though without either endorsement or disapproval. See Hemenway v. Peabody Coal Co., 159 F.3d 255, 257 (7th Cir. 1998). The district courts are split, with a majority favoring the rule of Iacono and holding that a bank is located wherever it has a branch. Compare Ferraiolo Constr., Inc. v. Keybank, 978 F. Supp. 23 (D. Me. 1997); Norwest Bank

Minn., N.A. v. Patton, 924 F. Supp. 114 (D. Colo. 1996); Bank of N.Y. v. Bank of Am., 861 F.Supp. 225, 231 (S.D.N.Y. 1994) (all following Iacono and holding that a national bank is a citizen of every state where it has a branch) with Baker v. First Am. Nat'l Bank, 111 F. Supp.2d 799, 800-01 (W.D. La. 2000); Financial Software Sys., Inc. v. First Union Nat'l Bank, 84 F. Supp. 2d 594 (E.D. Pa. 1999) (both holding that a national bank is a citizen only of the state of its principal place of business).

We begin by laying out what we perceive as the primary arguments for both parties. Firstar and the Comptroller contend that the predecessors of 28 U.S.C. sec. 1348 were meant to place national and state banks on equal footing for federal jurisdiction, and the current version should be interpreted in light of this background. Understanding this argument requires a brief recounting of the early history of federal court jurisdiction over national banks. National banks were created by the National Bank Act of 1863, 12 Stat. 665. For the first couple decades of their existence, any suit involving a national bank could be brought in or removed to federal court since national banks are creatures of federal law and thus any suit by or against them was a suit arising under federal law. See Petri v. Commercial Nat'l Bank, 142 U.S. 644, 648 (1892). In 1882, Congress acted to limit federal jurisdiction over national banks to only what existed for state banks. The Act of July 12, 1882, sec. 4, 22 Stat. 162, 163 stated in part that:

[T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking-associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun . . . .

"This was evidently intended to put national banks on the same footing as the banks of the state where they were

located for all the purposes of the jurisdiction of the courts of the United States." Leather Mfrs.' Nat'l Bank v. Cooper, 120 U.S. 778, 780 (1887). The 1882 Act was later superseded by the Act of March 3, 1887, sec. 4, 24 Stat. 552, 554-55,/1 which proclaimed:

[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

The language of the 1887 Act, which first included the phrase making national banks "citizens of the States in which they are respectively located" that appears in 28 U.S.C. sec. 1348, has been consistently interpreted by the Supreme Court to maintain jurisdictional parity between national banks and state banks or other corporations. See Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 565-66 (1963) ("Section 4 [of the 1882 and 1887 Acts] apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited."); Petri, 142 U.S. at 650-51 ("No reason is perceived why it should be held that Congress intended that national banks should not resort to Federal tribunals as other corporations and individual citizens might."). Firstar and the Comptroller argue that this operative phrase should be given the same meaning in the current statute. National banks should be treated like state banks or any other corporation under 28 U.S.C. sec. 1332.

Faul has two primary justifications for the position that a national bank is located in every state where it has a branch. The first is that Citizens & Southern National Bank v. Bougas, 434 U.S. 35 (1977) held that a bank was "located" wherever it had a branch for purposes of a prior version of the venue statute for national banks, 12 U.S.C. sec. 94 (amended 1982). This holding of

Bougas should be used to interpret "located" in 28 U.S.C. sec. 1348. Furthermore, Bougas itself cited 28 U.S.C. sec. 1348 as an example of a federal banking statute using the word "located," 434 U.S. at 36 n.1, strongly suggesting that the Court intended for its definition to apply to jurisdictional matters.

The second argument is that "located" should be given a meaning distinct from "established," which is used in the first paragraph of 28 U.S.C. sec. 1348. "Established" appears to refer to a single district. Thus, a bank should be considered to be "established" in the single state where its principal of business is found. See Iacono, 785 F. Supp. at 33. In order to give "located" a different meaning, it must refer to any state where a branch is.

We move from the parties' arguments to our own analysis. As in all statutory construction cases, we begin with the statutory language to determine if it provides a clear answer to the meaning of the words in question. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). Because "located" is not defined, we start with the assumption that Congress intended the word to have its ordinary meaning. FDIC v. Meyer, 510 U.S. 471, 476 (1994). The primary definitions of "locate" are "to determine or indicate the place of," "to fix or establish in a place," and similar variations. See The American Heritage Dictionary 1026 (4th ed. 2000); Webster's Third New International Dictionary 1327 (1993); 8 The Oxford English Dictionary 1081 (2d ed. 1989). Unfortunately, such definitions do not provide much aid in our inquiry--what we are trying to determine is the number or scope of places where a national bank is fixed or established. Some definitions do suggest that "locate" refers to a particular or specific location. See Webster's Third at 1327 (giving one definition of "locate" as "to set or establish in a particular spot or position"). However, these definitions referencing particular places would be a thin reed on which to rest our decision, given their own vagueness and that most of the definitions are unhelpful. Moreover, Bougas states that "located" has "no enduring rigidity," 434 U.S. at 44, indicating that the word has

no plain meaning as between a single place or multiple areas. Thus, the ordinary definition of "located" does not provide a clear answer to our question.

Another interpretive method that focuses on the statutory language is to consider the subject matter to which a word or phrase refers. United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993). A word can have a specific, clear meaning when used in discussing a particular subject, even though its general definition is vague. In the context of jurisdiction, use of the word "located" in discussing a corporation likely refers to the state where the principal place of business is located or perhaps where the company is incorporated. That is, if in the course of discussing jurisdictional motions a federal judge asks a lawyer representing a corporation "where is your client located," the judge likely expects to hear the lawyer respond by naming the state containing the corporation's principal place of business and probably the state of incorporation as well. The judge does not expect for the lawyer to rattle off every state where the corporation has facilities or a presence. Of course, most other kinds of business organizations besides corporations may be located in a large number of states for jurisdictional purposes. See Carden v. Arkoma Assocs., 494 U.S. 185, 189 (1992). One asking where a partnership is located for jurisdictional purposes would be prepared to hear a long list of states. This prevents any claim that "located" always refers to only a couple of states when discussing jurisdiction. Nevertheless, a national bank appears to be analogous in most respects to a corporation rather than some other kind of business organization, and thus one would expect that "located" in the jurisdictional context means the same thing for a bank as it does for a corporation. Even if this analysis of what "located" means in reference to jurisdiction is not conclusive, it supports Firstar and the Comptroller.

Moving away from generalized or specialized definitions, other principles of statutory construction weigh heavily in favor of construing "located" in 28 U.S.C. sec. 1348 to refer to a more limited number of states than wherever

the bank has a branch. Statutory words or phrases ambiguous in their common or contextual definitions can achieve settled meaning through judicial interpretation. If a phrase or section of a law is clarified through judicial construction, and the law is amended but retains that same phrase or section, then Congress presumably intended for the language in the new law to have the same meaning as the old. Bragdon v. Abbott, 524 U.S. 624, 645 (1998); Lorillard v. Pons, 434 U.S. 575, 581 (1978). A closely related principle is that a statute's longstanding meaning forms the background against which Congress legislates when it amends the law. The courts presume that Congress will use clear language if it intends to alter an established understanding about what a law means; if Congress fails to do so, courts presume that the new statute has the same effect as the older version. Cottage Savs. Ass'n v. Commissioner, 499 U.S. 554, 562 (1991); NBD Bank, N.A. v. Bennett, 67 F.3d 629, 632 (7th Cir. 1995)./2

These principles are applicable to this case. The 1882 Act established that national banks could take advantage of federal jurisdiction to the same extent as state banks, as expressed in Cooper. This same basic interpretation carried over to the 1887 Act, which Petri interpreted as placing national banks in the same position regarding federal jurisdiction as corporations. Thus, the courts had interpreted the phrase stating that national banks shall "be deemed citizens of the States in which they are respectively located" as providing for citizenship in the same manner as for state banks and other corporations. Subsequent versions of what is now 28 U.S.C. sec. 1348 continued to include this same phrase, without any other language indicating that Congress intended to alter this judicial construction. Thus, we assume that Congress intended these words to have the same meaning as was given to them in Petri, 142 U.S. at 650-51, which provided that national banks were to be treated the same as any other corporation for diversity purposes.

Likewise, since 1882 statutes have provided national banks with the same access to federal jurisdiction as state banks and other corporations. When

Congress enacted 28 U.S.C. sec. 1348 in 1948, this principle of equal jurisdictional access had been established and followed by the courts for over sixty years. Thus, Congress passed 28 U.S.C. sec. 1348 against an interpretive background which assumed that national banks were to have the same access to the federal courts as state banks and corporations. No language in the statute rebuts this presumption. A useful contrast can be drawn with the 1882 Act, which stated with exceptional clarity that national banks should not be able to resort to federal courts solely by virtue of their status as federal creations. Since Congress did not include any language suggesting that it intended to alter the established background assumption that federal courts have the same jurisdiction over national banks as over any other corporation, we presume that Congress intended for 28 U.S.C. sec. 1348's meaning to comport with the judicial interpretations of its predecessors. The Supreme Court has previously used similar reasoning in holding that the "domestic relations exception" to diversity jurisdiction survives through various amendments to 28 U.S.C. sec. 1332. Ankenbrandt v. Richards, 504 U.S. 689, 700-01, 703 (1992).

   Besides these related interpretive principles, the simple fact is that precedent supports the position of Firstar and the Comptroller. In Buffum v. Chase National Bank, 192 F.2d 58, 60 (7th Cir. 1951), we held that "a nationalbanking association is by statute placed before the law [for purposes of federal jurisdiction] the same as a bank not organized under the laws of the United States" (internal quotation marks omitted). See also American Sur. Co. v. Bank of Cal., 133 F.2d 160, 161-62 (9th Cir. 1943) (holding that "located" in predecessor of 28 U.S.C. sec. 1348 referred only to a national bank's principal place of business). In addition, Cope v. Anderson, 331 U.S. 461, 467 (1947), states that "[m]any provisions of federal law make national banks, in important aspects, peculiarly local institutions. For jurisdictional purposes, a national bank is a 'citizen' of the state in which it is established or located . . ." (emphasis added). This statement suggests that a national bank

is a citizen of only one state for purposes of diversity jurisdiction./3 To be sure, these cases were not decided yesterday. Nevertheless, stare decisis counsels that we follow their reasoning unless Faul can, in fact, demonstrate that subsequent statutory changes or judicial decisions have rendered them infirm.

Firstar and the Comptroller present a strong case; we now examine what Faul can array against it. Faul's main argument is based on Bougas; however, Bougas cannot bear the weight that Faul seeks to place upon it. The fact that Bougas cites 28 U.S.C. sec. 1348, 434 U.S. at 36 n.1, does not indicate the Supreme Court's view as to what "located" means within that statute. The opinion literally does nothing more than quote the statute and point out that the word "located" is used in it. Bougas carefully limits its holding to a discussion of how former 12 U.S.C. sec. 94 applies in determining state court venue, even pointing out that the question of federal court venue, which was governed by the same statute, is not before it, 434 U.S. at 39, 44 n.9. Furthermore, the affirmative reasons offered for the court's holding have no applicability to questions of jurisdiction. The Court did not purport to determine the plain meaning of the word "located" in the context of where suit should be brought, for example. Rather, the Court stated that requiring a national bank to defend a suit in any county where it had a branch would not impose significant costs or inconvenience on the bank because of modern advances in transportation and data processing. 434 U.S. at 44 & n.10. This rationale supports an expansive view of venue since the primary purpose of venue statutes is to limit inconvenience to the parties. However, reductions in the cost of litigating do not justify separating national banks from all other corporations so as to deny them federal diversity jurisdiction, as discussed in more detail below.

In addition, the various interpretive principles that counsel using the definition of a word or phrase in one statute to interpret another either do not apply or do not have much persuasive force here. The first of these aids is the frequently invoked canon that

"identical words used in different parts of the same act are intended to have the same meaning." E.g., Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (internal quotation marks omitted). However, this principle does not apply because the venue provision interpreted in Bougas was located in the National Banking Act, 12 U.S.C. sec. 21 et seq., while the jurisdictional provision is part of the Judicial Code and Judiciary Act, 28 U.S.C. sec. 1 et seq.

A second canon is that where a word is given a consistent meaning throughout the United States Code, then the courts assume that it has that same meaning in any particular instance of that word. See, e.g., Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 129-30 (1995); West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 88-92 (1991). Neither Faul nor the Iacono line of decisions makes any claim that "located" is used consistently throughout federal statutes to refer to any place where part of an entity is located. Thus, no basis exists for contending that "located" has an established statutory meaning.

The third potential canon is that different acts which address the same subject matter, which is to say are in pari materia, should be read together such that the ambiguities in one may be resolved by reference to the other. See, e.g., Erlenbaugh v. United States, 409 U.S. 239, 243 (1972); 2B Norman J. Singer, Sutherland Statutory Construction sec. 51.02 (6th ed. 2000). However, the tricky issue when applying this canon is determining when different statutes should be regarded as addressing the same topic. See 2B Sutherland sec. 51.03. A number of cases have refused to apply the canon to laws superficially relating to similar subjects where a finer examination revealed that the purposes underlying the laws varied. See, e.g., United States v. Granderson, 511 U.S. 39, 50-51 (1994); Fort Stewart Schs. v. FLRA, 495 U.S. 641, 647-48 (1990). This suggests that before construing different statutes in pari materia, courts should take a hard look to ensure that the purposes and subjects of the acts are in fact similar.

One could argue that both the venue

provision at issue in Bougas and 28 U.S.C. sec. 1348 concern the same subject: which court a national bank can bring suit or be sued in. However, this would blur important distinctions between venue and jurisdiction. "[V]enue is primarily a matter of convenience of litigants and witnesses." Denver & Rio Grande W. R.R. Co. v. Brotherhood of R.R. Trainmen, 387 U.S. 556, 560 (1963); see also Leroy v. Great W. United Corp., 443 U.S. 173, 183-84, 186-87 (1979); 17 Moore's Federal Practice sec. 110.01[1] (3d ed. 2000); cf. 28 U.S.C. sec. 1404(a) (permitting change of venue "[f]or the convenience of parties and witnesses"). The purpose of venue statutes is to limit the costs to those involved in litigation.

By contrast, the traditional justification for diversity jurisdiction is to minimize potential bias against out-of-state parties. Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 111 (1945); Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379, 382 (7th Cir. 1990). See generally Schwartz v. Electronic Data Sys., Inc., 913 F.2d 279, 287 & nn. 4-5 (6th Cir. 1990) (Merritt, C.J., dissenting). Diversity jurisdiction does not address mere inconvenience or a marginal increase in costs, but rather the substance of the decisionmaking process. That is, while venue provisions minimize the cost of obtaining a court's judgment without regard to what that judgment might be, diversity jurisdiction seeks to ensure a correct decision, in the sense of being rendered on the merits of the parties' case rather than because of prejudice against a foreigner. We have previously counseled against relying on interpretations of venue provisions to discern the meaning of jurisdictional statutes, see General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 704 (7th Cir. 1991), presumably because of the disparate purposes the two kinds of laws are supposed to serve. Thus, the in pari materia canon has little persuasive value in this context.

Fourth and finally, sometimes courts simply interpret ambiguous statutory language by reference to similar terms in an unrelated act. See 2B Sutherland sec. 53:03. If a court has no other solid basis for construing vague statutory language, if other interpretive

principles are in equipoise, or if the tribunal wants to shore up a determination made mostly on other grounds, then perhaps borrowing from an unrelated statute makes sense. However, this is a relatively weak aid given that Congress may well have intended the same word to have a different meaning in different statutes. See Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932); 2B Sutherland sec. 53:05.

Even if the third and fourth aids were to have some minimal persuasive value, this would be outweighed by the principles favoring Firstar and the Comptroller. In Dewsnup v. Timm, 502 U.S. 410, 417-20 (1992), the Court held that a phrase in one section of the bankruptcy code should be given its traditional, longstanding meaning, even though this differed from the definition given to the same phrase in another section of the bankruptcy code. Thus, the principle that a vague statutory text is to be given its established background meaning unless Congress clearly indicates to the contrary can, at least on some occasions, trump the canon that identical words or phrases have the same meaning throughout an act. A fortiori, the canon concerning background interpretations should overcome the in pari materia or general borrowing principles. Thus, even if the venue statute of Bougas were considered related to 28 U.S.C. sec. 1348, the traditional meaning of 28 U.S.C. sec. 1348 should prevail over using the venue statute as an aid to interpretation under the reasoning of Dewsnup. Therefore, we conclude that the rationales for interpreting "located" to maintain jurisdictional parity between national banks and other corporations outweigh applying the definition used in Bougas to 28 U.S.C. sec. 1348.

Faul's second primary argument is based on the canon that different words within the same statute should, if possible, be given different meanings. Lindsey v. Tacoma-Pierce County Health Dept., 195 F.3d 1065, 1074 (9th Cir. 1999); United States v. Maria, 186 F.3d 65, 71 (2d Cir. 1999). Faul's premise (which we believe is incorrect for reasons described below) is that the principal place of business is a national bank's only singular location, since national banks are not incorporated as other corporations are.

The language of the first paragraph of 28 U.S.C. sec. 1348 reads "established in the district for which the court is held . . ." (emphasis added), indicating that a bank is "established" in only a single place. Since the only specific place of a national bank is its principal place of business, "located" must refer to something else because of the above referenced canon. Paralleling Bougas, 434 U.S. at 44, Faul argues that "located" should refer to any place where the national bank has a branch so as to give "located" a different meaning from "established."

However, at least two singular locations exist for national banks: one is the principal place of business, and the other is the place listed on the bank's organization certificate where its "operations of discount and deposit are to be carried on," as required by 12 U.S.C. sec. 22. The meaning of "established" in the first paragraph of 28 U.S.C. sec. 1348 is not an issue squarely before this court and thus we do not make any definitive ruling regarding its definition. However, we do note that in the old venue statute interpreted in Bougas, all of the lower federal courts had held that "established" meant "the place specified in the bank's charter," 434 U.S. at 39, rather than its principal place of business. Thus, the canon that different words in the same statute should be given different meanings can be complied with by considering "established" as referring only to the place specified in the bank's charter, while giving "located" a meaning that includes a bank's principal place of business./4

Faul's remaining arguments also cannot overcome the weight of precedent and the interpretive principles favoring the position of Firstar and the Comptroller. Congress amended 12 U.S.C. sec. 94 in 1982 to specify that venue for actions involving national banks is appropriate where the bank's "principal place of business is located," thus altering the result in Bougas. Iacono, 785 F. Supp. at 33. Because Congress amended the venue statute but not 28 U.S.C. sec. 1348, Faul claims that Congress implicitly approved of using Bougas's definition of "located" in the jurisdictional provision. This argument based on congressional inaction

is very weak. Where Congress makes an isolated amendment to a single statutory provision but leaves the rest of an act untouched, courts should not infer that Congress approved judicial interpretations of the unamended parts of the act. See Alexander v. Sandoval, 121 S. Ct. 1511, 1523 (2001). Thus, even if the venue and jurisdictional provisions for national banks were part of the same act or otherwise related, Congress's amendment of 12 U.S.C. sec. 94 would not suggest approval of using Bougas's definition of "located" in 28 U.S.C. sec. 1348. The irrelevance to the interpretive process of Congress's failure to amend 28 U.S.C. sec. 1348 after Bougas is even more clear once one considers that the venue and jurisdictional provisions for national banks are located in different acts and serve different purposes. Thus, no basis exists for inferring that Congress intended for "located" in 28 U.S.C. sec. 1348 to be interpreted in accord with Bougas. Indeed, one could just as easily read from Congress's amendment of 12 U.S.C. sec. 94 that it disagreed with Bougas and did not desire for "located" to refer to any place where a branch is found.

Faul next asserts that national banks are not subjected to local bias in states where they maintain branch banks, and so diversity jurisdiction is not necessary in such cases. However, Congress has rejected an analogous argument with regard to corporations, which have access to diversity jurisdiction if sued in any state besides where they are incorporated or have their principal place of business, 28 U.S.C. sec. 1332, even if they have a significant and visible presence in the state in question. Metropolitan Life Ins. Co. v. Estate of Cammon, 929 F.2d 1220, 1223 (7th Cir. 1991) (stating that a party's "do[ing] lots of business" in a state is irrelevant for diversity jurisdiction so long as the party is not incorporated and does not have its principal place of business in that state). Faul has posited no reason for treating national banks so differently from corporations, and cases such as Petri, 142 U.S. at 650-51, hold that the two categories should be treated similarly. Whatever reasons Congress has for retaining diversity jurisdiction for corporations support an equal degree of access to diversity jurisdiction for national banks.

The final argument is that Congress has narrowed the federal judiciary's diversity jurisdiction in recent years, and many commentators argue that it should be narrowed even further or abolished entirely. Faul claims that because of these trends, the judiciary should construe grants of diversity jurisdiction narrowly. Cf. Iacono, 785 F. Supp. at 33-34.  However, Congress controls the scope of diversity jurisdiction, subject only to the limitations of Article III. The courts should not use our own judgments about when the purposes of diversity jurisdiction are served or our guesses about what Congress will do in the future to constrict our congressionally mandated jurisdiction in the here and now. See Bianca v. Parke-Davis Pharm. Div. of Warner-Lambert Co., 723 F.2d 392, 396 (5th Cir. 1984). The interpretive principles surveyed above indicate that Congress meant to retain the traditional meaning of "located" in 28 U.S.C. sec. 1348, and narrowing this construction on the basis of policy concerns would be inappropriate.

   Having concluded that Firstar and the Comptroller have the better arguments, we now spell out our precise holding. As the discussion of the subject matter context, settled and longstanding interpretive background, and judicial construction of "located" in the predecessors of 28 U.S.C. sec. 1348 demonstrate, "located" should be construed to maintain jurisdictional equality between national banks and state banks or other corporations. In order to maintain this parity, national banks would need potentially to be citizens of two different states, since under 28 U.S.C. sec. 1332(c)(1) corporations are considered to be citizens of both where their principal place of business is located and their state of incorporation./5 While a national bank is not incorporated in a state, the organization certificate described in 12 U.S.C. sec. 22 serves a function similar to a certificate of incorporation. Financial Software, 84 F. Supp.2d at 605 n.10. This certificate must list a state where the bank's "operations of discount and deposit are to be carried on;" this serves as an adequate substitute for the state of incorporation which is used for

state banks and other corporations. Therefore, we hold that for purposes of 28 U.S.C. sec. 1348 a national bank is "located" in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate./6

III.  Conclusion

   Consideration of context, canons, and other determinants of statutory meaning lead to the conclusion that a national bank is "located" for purposes of 28 U.S.C. sec. 1348 in the state where the bank's principal place of business is found and the state listed on its organization certificate. For the reasons stated herein, we Reverse and Remand for further proceedings consistent with this opinion.

FOOTNOTES

/1 This statute was reenacted in 1888 as the Act of August 13, 1888, sec. 4, 25 Stat. 433, 436 to correct certain technical errors; the language of this act was the same as in 1887.

/2 Like any other interpretive principles, these two are only presumptions and can be rebutted by the plain meaning of the text or other canons. Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302, 1309 (2001).

/3 For the reasons explained near the end of this opinion, we deviate from American Surety and the aside in Cope by concluding that national banks potentially can be citizens of two states for diversity purposes. This variance is necessary to satisfy Buffum and the interpretive principles explored above.

/4 Firstar and the Comptroller also point out that Fisher v. First National Bank of Chicago, 538 F.2d 1284, 1286 (7th Cir. 1976) held that "established" and "located" are synonymous for purposes of 12 U.S.C. sec. 94 (amended 1982) and indicated this holding carried over to 28 U.S.C. sec. 1348. However, since Bougas, 434 U.S. at 44, held that "established" and "located" in the previous version of 12 U.S.C. sec. 94 should be given different meanings, the part of Fisher relied on by the plaintiff has effectively been abrogated.

/5 Interpreting 28 U.S.C. sec. 1348, the current version of which was promulgated in 1948, by referencing 28 U.S.C. sec. 1332(c)(1), enacted ten years later in 1958, might strike some as incongruous. However, the "classic judicial task

of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." United States v. Fausto, 484 U.S. 439, 453 (1988); see also Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 786 n.17 (2000).

/6 The parties occasionally seem to use principal place of business and the location on the certificate interchangeably, but no statute or regulation that we have found requires that a bank's principal place of business (that is, where the bank's executive headquarters are located, see Metropolitan Life, 929 F.2d at 1223) actually be located at the place specified on its organization certificate. Nevertheless, a national bank denominating a state other than its principal place of business in its organization certificate apparently either never occurs or is exceedingly rare. See Financial Software, 84 F. Supp.2d at 605 n.10. Thus, our holding is likely to lead as a practical matter to national banks being citizens of only a single state. However, this result is no different than for corporations (such as Faul Chevrolet) which are incorporated and have their principal place of business in the same state, see id., and is not a reason for interpreting "located" in the expansive manner of Iacono, which deviates to a far greater extent from 28 U.S.C. sec. 1332(c)(1).