**EVERGREEN FOREST PRODUCTS OF GEORGIA, LLC, et al. Plaintiffs,**

v.

**BANK OF AMERICA, N.A. Defendant.**

**No. CIV.A.03–1–10–N.**

United States District Court, M.D. Alabama, Northern Division.

May 13, 2003.

---

27. *Greenspan,* 26 F.3d at 1006.

28. *Hinman,* 831 F.2d at 939 (citing *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986)).

Walter B. Calton, Calton & Rutland LLC, Eufaula, for Evergreen Forest Products of Georgia, LLC, Lanier J. Edwards, Charles H. Thomas, Jr., plaintiffs.

James C. Huckaby, Jr., John W. Scott, L. Jackson Young, Jr., Kimberly W. Geisler, Huckaby Scott & Dukes, PC, Birmingham, for Bank of America, NA, defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Remand (Doc. # 7) filed by Plaintiff

Lanier J. Edwards.[1]

The Plaintiff originally filed his Complaint in the Circuit Court of Barbour County, Alabama on December 3, 2002. In the Complaint, the Plaintiff asks the court to vacate an arbitration award entered in favor of the Defendant, Bank of America, N.A., and to enjoin the Defendant from executing liens upon the Plaintiff's real and personal property located in Alabama.

The Defendant filed its Notice of Removal on January 3, 2003, stating that this court has jurisdiction over the case based upon diversity of citizenship (Doc. # 1). On January 13, 2003, the Defendant filed its Answer, Affirmative Defenses, and Counterclaims (Doc. # 2). With regard to the counterclaims against the Plaintiff, the Defendant seeks confirmation of the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, and raises a state law breach of guaranty claim based on the Plaintiff's alleged failure to pay the amounts due under two promissory notes.[2]

The Plaintiff responded to the Defendant's Notice of Removal by filing the Motion to Remand presently before the court. For the reasons to be discussed, the Plaintiff's Motion to Remand is due to be DENIED.

## II. *MOTION TO REMAND STANDARD*

■ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir.1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases when federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

## III. *FACTS*

This suit arises out of a failed loan agreement between the Plaintiff, Lanier J. Edwards, and the Defendant, Bank of America, N.A. Edwards, a citizen of Georgia,[3] and Charles H. Thomas, a citizen of Mississippi, are the owners of Evergreen Forest Products of Georgia, LLC, a limited liability company organized under the laws of Georgia. In connection with a $12

---

1. At the outset, the court notes a conflict between the parties as to the identity of the plaintiffs in this action. The caption of the Complaint lists three plaintiffs: Edwards, Charles H. Thomas, Jr., and Evergreen Forest Products of Georgia, LLC ("Evergreen"). Additionally, the Complaint seeks relief that impacts both the collective group as well as Edwards individually. Nevertheless, the Complaint's "Parties" section only lists Edwards and all subsequent court filings refer to Edwards as the singular "Plaintiff." Because the presence of Thomas and Evergreen Forest have no impact on the court's remand analysis, the court will assume, for purposes of this motion only, that Edwards is the only plaintiff in the case. However, as explained in the

Order accompanying this Memorandum Opinion, the court directs Edwards to clarify the parties in this litigation.

2. In addition to the counterclaim asking the court to confirm the arbitration award, the Defendant filed a separate "Application for An Order Confirming Arbitration Award" on January 31, 2003 (Doc. # 6).

3. Although the Defendant disputes Edwards's assertion that he is a citizen of Georgia for purposes of diversity jurisdiction, the court assumes, without deciding, that this representation is correct.

million loan, Evergreen executed two promissory notes[4] on May 11, 1998, in favor of Bank of America, a national bank organized under the laws of the United States with its principal place of business in North Carolina and branch offices in over twenty states.[5] As additional security for the loan, both Edwards and Thomas executed personal guaranty agreements on this same date.

In 2001, Evergreen defaulted on its obligations under the promissory notes. In response, Bank of America accelerated the indebtedness on the loans and demanded arbitration against Evergreen, Edwards, and Thomas pursuant to the arbitration provisions in the promissory notes and guaranty agreements. Following a hearing in Atlanta on July 10, 2002, the arbitrator issued a formal award in favor of Bank of America on September 5, 2002, for a sum in excess of $9.5 million.

On November 3, 2002, the Plaintiff filed suit against Bank of America in the Superior Court of Fulton County, Georgia, seeking an abrogation of the arbitration award as well as injunctive and declaratory relief (Civil Action No.2002 CV 59841). The Plaintiff also filed a second action in the Superior Court of Quitman County, Georgia, seeking identical relief (Civil Action No.2002 CV 102). After initiating those two actions,[6] the Plaintiff filed this suit in the Circuit Court of Barbour County, Alabama, on December 3, 2002. Therefore, three cases are currently pending

regarding the validity of the arbitration award.[7]

## IV. DISCUSSION

Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). Bank of America argues that removal was proper because the court has jurisdiction over this case due to diversity of citizenship. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996) (stating that the party seeking removal to federal court has the burden of establishing federal jurisdiction).

■ The diversity statute confers jurisdiction on the federal courts in civil actions between citizens of different states, in which the jurisdictional amount of greater than $75,000, exclusive of interest and costs, is met. *See* 28 U.S.C. § 1332(a)(1). According to the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 292 F.3d 1334, 1337 (11th Cir.2002). In this action, the Plaintiff contests the existence of both complete diversity and the amount-in-controversy requirement. Consequently, the court will evaluate each of these arguments in turn.

### A. Diversity of Citizenship

The Plaintiff contends that diversity is absent because he is a citizen of Georgia

---

4. The first note was for $11.5 million. The second note was for $500,000.

5. Although NationsBank, N.A. was the named payee in the notes at issue in this case, Bank of America is the successor in interest to NationsBank.

6. The Plaintiff believes that the Georgia state court actions will be consolidated into a single proceeding.

7. In all three actions, Bank of America has filed identical counterclaims against the Plaintiff for confirmation of the arbitration award and breach of the guaranty agreements.

and the Defendant is also a citizen of Georgia because it has branch offices in that state. The Defendant contends that diversity exists because it is a citizen only of North Carolina, where its main office is located, and not of any state where it maintains branches. The Defendant also contends that the Plaintiff is a citizen of Alabama, not Georgia, and that the Defendant does not even maintain branches in Alabama.

■ This case presents an issue of first impression in this district and circuit: how to determine the citizenship of a national bank for purposes of diversity jurisdiction? Ordinarily, a corporation is a citizen of its state of incorporation and the state where it maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A national bank, however, does not have a state of incorporation because it is organized under federal law pursuant to the National Banking Act. *See* 12 U.S.C. § 22–24. As a result of this unique organizational structure, Congress enacted a separate jurisdictional statute that addresses the citizenship of national banks. According to 28 U.S.C. § 1348:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, un-

der chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

Unfortunately, this statute fails to clearly resolve the citizenship of a national bank in a diversity action. According to the second paragraph, national banks involved in diversity suits are deemed citizens of the states in which they are "located." Not surprisingly, both the parties in this case and the federal courts are divided over the meaning of this ambiguous term.

The United States Court of Appeals for the Ninth Circuit was the first court to address this issue. In *American Surety Co. v. Bank of California*, 133 F.2d 160, 161–62 (9th Cir.1943), the court held that national banks are "located" for purposes of diversity jurisdiction in the state where they maintain their principal place of business.[8] Beginning with *Connecticut National Bank v. Iacono*, 785 F.Supp. 30 (D.R.I.1992), however, the overwhelming majority of federal courts interpreted "located" in section 1348 to mean that national banks are citizens of every state in which they maintain a branch office. *See id.* at 33–34; *First Union Corp. v. Am. Cas. Co.*, 222 F.Supp.2d 767, 770 (W.D.N.C.2001); *Roozenbloom v. U.S. Bank*, 2000 WL 249403, at *3 (D.Or.

---

**8.** Although *American Surety* interpreted 28 U.S.C. § 41(16), this predecessor statute to 28 U.S.C. § 1348 contained the same material language. *Compare* Act of Mar. 3, 1911, ch. 231, § 24, para. 16, 36 Stat. 1091, 1092–93 ("[A]ll national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located."), *with*, 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.").

Feb.22, 2000); *Frontier Ins. Co. v. MTN Owner Trust*, 111 F.Supp.2d 376, 376–81 (S.D.N.Y.2000); *Ferraiolo Const., Inc. v. Keybank, N.A.*, 978 F.Supp. 23, 25–27 (D.Me.1997); *Norwest Bank Minn., N.A. v. Patton*, 924 F.Supp. 114, 115 (D.Colo. 1996); *Silver v. Bank Midwest, N.A.*, 1996 WL 328737, at *2 (D.Kan. May 15, 1996); *Signet Bank v. Hitachi Credit Am. Corp.*, 1996 U.S. Dist. LEXIS 19358, at *7–13 (E.D.Va. Oct. 4, 1996). *But See Fin. Software Sys., Inc. v. First Union Nat'l Bank*, 84 F.Supp.2d 594, 602 (E.D.Pa.1999) (holding that a national bank is a citizen "only of the state in which it maintains its principal place of business"); *Baker v. First Am. Nat'l Bank*, 111 F.Supp.2d 799, 800–01 (W.D.La.2000) (same). These courts declined to follow the rule announced in *American Surety* because of the Supreme Court's subsequent decision in *Citizens & Southern National Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977).[9] *Iacono*, 785 F.Supp. at 32. The Plaintiff urges this court to adopt *Iacono*'s interpretation of section 1348. According to this view, remand to state court is appropriate in this case because Bank of America, by virtue of its numerous branch offices in Georgia, is not diverse from Edwards, a citizen of Georgia.

In 2001, the United States Court of Appeals for the Seventh Circuit introduced a third interpretation of section 1348. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir.2001). Disagreeing with both *American Surety* and *Iacono*, Firstar held that "a national bank is 'located' in, and thus a citizen of, the state of its principal place of business *and* the state listed in its organizational certificate." *Id.* at 994 (emphasis added). Since this decision, every district court that has construed section 1348 has adopted *Firstar*. *See Pitts v. First Union Nat'l Bank*, 217 F.Supp.2d 629, 630–31 (D.Md.2002); *Bank One, N.A. v. Euro–Alamo Invs., Inc.*, 211 F.Supp.2d 808, 810 (N.D.Tex.2002); *Bank of Am., N.A. v. Johnson*, 186 F.Supp.2d 1182, 1183–84 (W.D.Okla.2001). Bank of America argues that this court should join the growing list of *Firstar* disciples. Applying *Firstar*'s reasoning to the facts of this case, Bank of America contends that it is completely diverse from the Plaintiff because it maintains its principal place of business in North Carolina and lists North Carolina in its organizational certificate. *See Johnson*, 186 F.Supp.2d at 1184 (holding that Bank of America, N.A. is a citizen of North Carolina for diversity purposes).

Because the Eleventh Circuit has yet to determine this issue,[10] this court must decide, without binding authority, whether to adopt *American Surety, Iacono*, or *Firstar*

---

**9.** Addressing a prior version of the venue statute for national banks, 12 U.S.C. § 94 (amended 1982), *Bougas* held that a national bank was "located" in every county in which the bank maintained a branch office. *Bougas*, 434 U.S. at 46, 98 S.Ct. 88 (Stewart, J., concurring). *Iacono* concluded that this interpretation of "located" should also extend to section 1348, one of several statutes related to national banks that contains the word "located." *Iacono*, 785 F.Supp. at 33. As explained below, this court believes that *Iacono*'s interpretation conflicts with the history and purpose of section 1348.

**10.** In *Berkowitz v. Midlantic Corp.*, 1997 WL 452206, at *4 n. 1 (D.N.J. July 18, 1997), the Federal District Court for the District of New Jersey cited an Eleventh Circuit case, *In re First Nat'l Bank of Boston*, 70 F.3d 1184, 1188 (11th Cir.1995), for the proposition that a "national bank is a citizen only of the state encompassing its principal place of business." This court believes that this citation is incorrect. First, the Eleventh Circuit vacated this decision after the parties settled the case in the district court. *In re First Nat'l Bank of Boston*, 102 F.3d 1577, 1577 (11th Cir.1996). Second, the *Boston* court never engaged in a substantive discussion concerning the mean-

as the law of this case.[11] As the following discussion explains, this court generally embraces the well-reasoned *Firstar* decision, but deviates slightly from its ultimate holding. The court agrees with *Firstar* that a national bank is a citizen of the state where it maintains its principal place of business. However, rather than using a national bank's original organizational certificate as the second component in the citizenship determination, this court believes that a bank's most recent articles of association provide a more accurate standard for determining a bank's current citizenship. This decision is supported by statutory construction of section 1348 in light of its history and purpose.

1. *History & Purpose of 42 U.S.C. § 1348*

██ If a pure textual analysis does not reveal the meaning of a statutory term,[12] courts must look to the purpose of the legislation. *See Nat'l Wildlife Fed'n v. Marsh,* 721 F.2d 767, 778 (11th Cir.1983) ("The statutory language is to be interpreted in a way that accomplishes the obvious purpose of Congress in enacting the statute."). This general rule of statutory construction is amplified by the following principle: when judicial interpretations have settled the meaning of an existing statutory phrase, repetition of the same language in an amended version of a statute indicates an intent to incorporate prior interpretations as well. *See Bragdon v. Abbott,* 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). As the following

ing of section 1348. Indeed, the only discussion about section 1348 occurs in a footnote in which the court states that "there is no actual *evidence* in the record that Bank of Boston was 'located' in Florida through a branch office." *Id.* at n. 3. Notwithstanding this lack of analysis, at least one other federal district court believes this footnote "indicates that *if* the [Eleventh Circuit] had addressed the issue of the scope of 'located,' it would have found that the term includes branch offices." *Keybank,* 978 F.Supp. at 26 (emphasis added). This court is unwilling to draw such a sweeping conclusion from an ambiguous footnote. The fact of the matter is that the Eleventh Circuit did not address the meaning of "located" as that term appears in section 1348. Furthermore, the footnote in *Boston* could be interpreted several ways. On one hand, the court may have genuinely intimated that "located" should be read to mean that national banks are citizens of all states in which they maintain branch offices. On the other hand, the court may have been saying that even if it had adopted this view of section 1348, the facts of *Boston* did not support such an argument because the bank did not establish the existence of any Florida branches. As a result of the uncertain tenor of this discussion, this court believes that *Boston* does not resolve the issue presented in this case.

11. The only other district court within the Eleventh Circuit to interpret section 1348 held that a national bank is a citizen of the state where it maintains its principal place of business. *See Landmark Tower Assocs. v. First Nat'l Bank,* 439 F.Supp. 195, 196 (S.D.Fla.1977). In one paragraph of discussion, the court simply cited section 1348 for the proposition that national banks are citizens of the states in which they are located and went on to hold that the First National Bank of Chicago, by virtue of its principal place of business, is a citizen of Illinois. *Id.* The court did not address whether a national bank could be "located" in states where the bank maintains branch offices. Furthermore, the court did not cite any authority for its ultimate holding that a national bank is "located" only in the state where it maintains its principal place of business.

12. A strict textual analysis of the word "located" is unhelpful in this case. Although "locate" generally means "to fix or establish in a place," such everyday definitions are of little assistance when the issue before the court is the "number or scope of places where a national bank is fixed or established." *Firstar,* 253 F.3d at 982.

discussion of section 1348's history and development reveals, these two rules of construction help to illuminate the meaning of the word "located."

Section 1348 is the current version of a statutory provision that originated in an 1864 amendment to the National Bank Act. *Fin. Software Sys.*, 84 F.Supp.2d at 599. According to the initial version of the statute, national banks had the power to "make contracts, sue and be sued, complain and defend, in any court of law and equity as fully as natural persons." Act of June 3, 1864, ch. 106, § 8, 13 Stat. 99, 101. The Supreme Court interpreted this phrase to mean that all suits by or against national banks arose under federal law, thus any action involving a national bank automatically created federal question jurisdiction. *See Fin. Software Sys.*, 84 F.Supp.2d at 599 (citing *Leather Mfrs' Nat'l Bank v. Cooper*, 120 U.S. 778, 780, 7 S.Ct. 777, 30 L.Ed. 816 (1887) (holding that a suit by or against a national bank is necessarily a suit arising under the laws of the United States because a national bank is a federally chartered corporation)). In 1882, however, Congress amended the statute to state the following: "The jurisdiction for suits hereafter brought by or against ... [a national bank] ... shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States." Act of July 12, 1882, ch 290, § 4, 22 Stat. 162, 163. According to the Supreme Court, this amendment "was evidently intended to put national banks on the same footing as banks of the state where they were located for all the purposes of the jurisdiction of the courts of the United States." *Leather Mfrs. Nat'l Bank*, 120 U.S. at 780; *see Petri v. Commercial Nat'l Bank*, 142 U.S. 644, 648, 12 S.Ct. 325, 35 L.Ed. 1144 (1892) (stating

that after the 1882 amendment, "the jurisdiction of the circuit courts over suits by or against national banks could no longer be asserted on the ground of their federal origin, as they were placed in the same category with banks not organized under the laws of the United States."). Therefore, national banks could no longer invoke federal question jurisdiction simply because of their federal charter. *See Petri*, 142 U.S. at 648, 12 S.Ct. 325.

In 1887, Congress amended the jurisdictional statute once again and introduced the language that would later form the basis of section 1348:

> [A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, *be deemed citizens of the States in which they are respectively located;* and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same state.

Act of March 3, 1887, § 4, 24 Stat. 552, 554–55 (emphasis added). Although this amendment altered the language of the 1882 statute, Congress did not intend to change the former statute's fundamental purpose. As the Supreme Court explained in *Petri v. Commercial National Bank*, 142 U.S. 644, 651, 12 S.Ct. 325, 35 L.Ed. 1144 (1892), the 1887 amendment merely reaffirmed the notion that national banks should not have additional access to the federal courts by virtue of their federal charter. *Id.* at 651, 12 S.Ct. 325 (stating that federal courts should not have "jurisdiction because of the federal origin of the bank"). Furthermore, the Court interpreted the language of the new statute—

that national banks shall be "deemed citizens of the States in which they are respectively located"—in such a way that preserved the "jurisdictional parity" between national banks and state corporations. *Firstar*, 253 F.3d at 982; *see Petri*, 142 U.S. at 650–51, 12 S.Ct. 325 ("No reason is perceived why it should be held that congress intended that national banks should not resort to federal tribunals as other corporations and individual citizens might.").

In 1948, Congress enacted section 1348 and did not provide any textual modifications that indicated an intent to alter prior judicial constructions of the statute. *See Firstar*, 253 F.3d at 988. Indeed, absent such textual changes, Congress is presumed to have enacted section 1348 against the backdrop of prior Supreme Court precedent, which unequivocally held that national banks should have the same degree of access to the federal courts as state banks and corporations. *See Fin. Software Sys.*, 84 F.Supp.2d at 601 ("For the last century, the law as understood by the Supreme Court has been to extend federal jurisdiction to suits by or against national banks in like fashion as to state banks.").

With the goal of "jurisdictional parity" between national and state banks serving as an interpretive guide, the meaning of the word "located" as found in section 1348 begins to come into focus. In order to maintain this parity with state banks, national banks must have two independent components that determine their citizenship. State banks are organized under state corporate law, *see, e.g.*, *Ala.Code* §§ 5–5A–1 to 9, thus they are citizens, for diversity purposes, of the state where they maintain their principal place of business and of their state of incorporation. *See* 28 U.S.C. § 1332(c). National banks obviously have a principal place of business, however, they do not have a state of incorporation because they are organized under federal law. Due to the absence of a state certificate of incorporation, *Firstar* reasoned that a national banks's organizational certificate would serve as an appropriate substitute because it requires a bank to disclose the "place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and the particular county and city, town, or village." *See Firstar*, 253 F.3d at 994; 12 U.S.C. § 22. This analogy proved useful in *Firstar* given the fact that Firstar Bank maintained its "operations of discount and deposit" in the same state listed in its original organizational certificate issued in 1863. *See* Letter From Eric Thompson, Director, Bank Activities & Structure, Comptroller of the Currency, to Scott Cammarn. Associate General Counsel, Bank of America, N.A. 6 (Oct. 23, 2002), *available at* http://www.occ.treas.gov/interp/feb03/int952.pdf (Defendant's Notice of Filing of Supplemental Authority, Ex. A, Doc. # 13). The analogy is less helpful in the present case, as Bank of America no longer has its "operations" in the state listed in its original organizational certificate.

Bank of America, N.A. is the product of a 1999 merger in which NationsBank merged into Bank of America Trust & Savings Association. According to its original certificate of organization, Bank of America maintained its "operations of discount and deposit" in San Francisco, California. Following the merger, however, Bank of America moved its operations to the main office of the old NationsBank, in Charlotte, North Carolina. Consequently, Bank of America presently has its "main

office" and "operations of discount and deposit" in North Carolina, even though its original section 22 organizational certificate states that these operations are in California.[13] *See id.* at 1–7.

As a result of this disparity between the true location of Bank of America's "operations" and the information detailed in its organizational certification, the court declines to adopt *Firstar*'s holding that a national bank is also located, for purposes of section 1348, in the state listed in its organization certificate. In rejecting *Firstar*'s approach, this court is persuaded by an opinion letter issued by the Comptroller of the Currency[14] that states the following:

> [*Firstar*'s] use of the state listed in the organizational certificate as the analogue to the state of incorporation was incomplete. While most national banks do not change the location of their main office from the state originally listed in the

organizational certificate, some do. As set out above, the state that was listed in the organizational certificate can be changed under statutes that provide for changing the location of the main office. When this occurs, the original organizational certificate document itself is not changed. The change in designation of the place of operations (including state) is reflected in other documents, particularly the articles of association.

Letter From Eric Thompson to Scott Cammarn, Associate General Counsel, Bank of America, N.A. 6 (Oct. 23, 2002), *available at* http://www.occ.treas.gov/interp/feb03/int952.pdf (Defendant's Notice of Filing of Supplemental Authority, Ex. A, Doc. # 13).

In the event a national bank moves its "main office" or "operations of discount and deposit" to a new location, this change must be reflected in the bank's articles of association. *See* 12 C.F.R. § 5.40(d)(2)

---

**13.** The court notes the existence of a textual inconsistency between the statute articulating the requirements for a national bank's certificate of organization, 12 U.S.C. § 22, and the statute authorizing a national bank to move its location, 12 U.S.C. § 30(b). Section 22 provides that a national bank must indicate on its organizational certificate "the place where its operations of discount and deposit are to be carried on." 12 U.S.C. § 22. When Congress originally enacted section 30(b), it used identical terminology: "any national bank may change ... the place where its operations of discount and deposit are to be carried on." Act of May 1, 1886, ch. 73, § 2, 24 Stat. 18, 18. In 1959, Congress replaced the language in section 30(b) with the term "main office." Pub.L. No. 86–230, § 3, 73 Stat. 457, 457 (1959); *see also* 12 U.S.C. § 1831u(d)(1) (stating that following a merger, a resulting bank may "retain and operate, as a main office or a branch, any office that any bank involved in an interstate merger transaction was operating as a main office or

a branch immediately before the merger transaction"). Because Congress did not make a parallel amendment to section 22, courts are left to ponder whether a national bank's "main office" somehow differs from the "location where its operations of discount and deposit are to be carried on." This court finds no fundamental inconsistency in these terms and believes, for purposes of location, a national bank's "main office" and the "place where its operations of discount and deposit are to be carried on" are the same. *See* Letter From Eric Thompson, Director, Bank Activities & Structure, Comptroller of the Currency, to Scott Cammarn, Associate General Counsel, Bank of America, N.A. 6 (Oct. 23, 2002), *available at* http://www.occ.treas.gov/interp/feb03/int952.pdf (Defendant's Notice of Filing of Supplemental Authority, Ex. A, Doc. # 13).

**14.** The Comptroller of the Currency is the bureau of the Department of Treasury that charters and regulates national banks. *See* 12 U.S.C. § 1.

(stating that a national bank must "[a]mend its articles of association" if it relocates its "main office"); *see also* 12 U.S.C. § 21a (stating that national banks may amend their articles of association). Conversely, federal law does not require a national bank to make an analogous amendment to its original section 22 certificate of organization. This distinction is important to the present case because it renders Bank of America's organizational certificate inaccurate. As discussed above, Bank of America lists California as the location in its original section 22 certificate, however, it has since moved its "main office" and "operations of discount and deposit" to North Carolina. If this court applied *Firstar*'s holding to these facts, Bank of America would be a citizen of California, despite the fact it no longer has its "main office" or "operations" in that state. This potential conclusion reveals a flaw in *Firstar*'s reasoning. Without some method to account for the fact that a national bank can change the location of its operations, application of *Firstar* could result in national banks being deemed citizens of states where they no longer maintain significant contacts. *See* Letter From Eric Thompson to Scott Cammarn, at 6. Unlike a state bank, which is governed by the laws of the state of its incorporation, a national bank is not governed by the laws of the state listed in its organizational certificate. Therefore, there is no logical reason for the organizational certificate to have any significance in the context of citizenship. Because a national bank's articles of association are updated regularly, this court believes they provide a much more accurate indication of a national bank's true location.

Contrary to the Plaintiff's assertion, the court would undermine the jurisdictional parity at the heart of section 1348 if it adopted the rule that a national bank is a citizen of every state in which it has a branch office. Under the Plaintiff's construction of section 1348, national banks would have far less access to federal courts via diversity jurisdiction than state banks, because they might be citizens of numerous states. For example, Bank of America has branch offices in over twenty states, thus its access to the federal courts though diversity jurisdiction would be far more limited than an analogous state bank that is a citizen of, at most, two states pursuant to 28 U.S.C. § 1332(c). Although the Plaintiff argues that his construction of section 1348 is consistent with the modern trend of limiting the breadth of diversity jurisdiction, *see Norwest Bank,* 924 F.Supp. at 115, this court is unwilling to disregard congressional intent in order to further such a general trend. The court finds no basis for allowing the advent of interstate branch banking to limit the access of national banks to federal courts to less than that afforded to state banks.

■ In accord with foregoing analysis, this court believes that 28 U.S.C. § 1348 is best understood to mean that a national bank is "located" in, and thus a citizen of, the state of its principal place of business and the state listed in its most recent articles of association. According to the undisputed submissions of the parties, Bank of America maintains it principal place of business in Charlotte, North Carolina and lists North Carolina as the location of its "main office" in its most recent articles of association. *See* Letter From Eric Thompson to Scott Cammarn, at 6–7. Consequently, Bank of America is a citizen of North Carolina for purposes of diversity jurisdiction. Whether the Plaintiff is a citizen of Georgia, as he contends, or of Alabama, as the Defendant contends, ei-

ther way complete diversity exists between the parties.

### B. *Amount in Controversy*

 Having concluded that the parties in this case are completely diverse from each other, the court will next consider whether the $75,000.00 amount-in-controversy requirement is met. Because the Plaintiff seeks only declaratory and injunctive relief, the amount in controversy is measured by the value of the object of the litigation from the Plaintiff's perspective. *See Ericsson Mobile Communs., Inc. v. Motorola Communs. & Elecs., Inc.*, 120 F.3d 216, 218–19 (1997). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir.2000). According to his Complaint, the Plaintiff asks the court void the $9.5 million arbitration award and enjoin Bank of America from placing liens against his Alabama property. *See* Complaint, ¶¶ 14–22. From the Plaintiff's perspective, the pecuniary consequences of such relief would be well in excess of the $75,000.00 jurisdictional minimum. *See, e.g., Sirotzky v. New York Stock Exchange*, 2002 WL 1052029, at *1, (N.D.Ill. May 20, 2002) ("When a party seeks to vacate an arbitration decision and the underlying award *exceeds* $75,000, the amount-in-controversy requirement is clearly satisfied.").

Nevertheless, the Plaintiff argues that his objection to the arbitration award is currently pending in the Georgia state court actions, thus "the only issue before this court is the injunctive relief." *See* Plaintiff's Brief In Support of Motion to Remand, p. 16. This argument is without merit, as the Plaintiff's Complaint clearly

seeks to void the arbitration award. *See* Complaint, ¶¶ 14–16. Moreover, the fact that this same issue may be pending in a state court proceeding is of no consequence to this court's determination of whether it has jurisdiction over this case. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ....' "). In the end, the Plaintiff requests that this court vacate an arbitration award that exceeds $75,000.00, therefore the amount-in-controversy requirement is met in this case

### V. *CONCLUSION*

For the reasons stated above, the court concludes that the two requirements for diversity jurisdiction are present in this case: the parties are completely diverse and the amount in controversy exceeds $75,000.00. Accordingly, it is hereby ORDERED as follows:

1) The Motion to Remand (Doc. # 7) is DENIED.

2) The Motion For Leave To File Supplemental Evidence (Doc. # 14) is DENIED as moot.

3) Plaintiff Lanier J. Edwards is DIRECTED to file an Amended Complaint clarifying the identify of the plaintiffs in this action by May 23, 2003. Such Amended Complaint must conform to the requirements of Local Rule 15.1.