Julie R. ADAMS, Individually and as Administrator of the Estate of Robert L. Adams, Plaintiff,

v.

BANK OF AMERICA, N.A., successor by merger to Bank of America, FSB, Defendant.

No. 3:02–CV–40104.

United States District Court, S.D. Iowa, Davenport Division.

May 4, 2004.

Stephen T. Fieweger, Katz Huntoon & Fieweger, Rock Island, IL, for Plaintiff.

Roger T. Stetson, Michael R. Reck, Holly M. Logan, Belin Lamson McCormick Zumback & Flynn PC, Des Moines, IA, for Defendant.

## ORDER

GRITZNER, District Judge.

On April 19, 2004, the Court ordered a hearing on Defendant's Motion for Summary Judgment. In addition to the pending motion, the parties were instructed to discuss why the Court should exercise supplemental jurisdiction over the remaining state contract claims. A telephonic hearing was conducted on April 22, 2004. Representing Plaintiff Julie Adams was Stephen Fieweger; representing Defendant Bank of America was Michael Reck.

## I. FACTS

This case has always boiled down to a rather simple dispute, though arising from complicated communications failures, over the requirement that borrowers maintain homeowner's insurance to protect the real estate subject to the lender's mortgage. On November 1, 1996, Robert and Julie Adams ("the Adamses") executed a promissory note with Firstar Home Mortgage Corporation ("Firstar") which was assigned to Bank of America ("BOA") in July 1997. The Adamses were required to maintain homeowner's insurance as a term of the mortgage. The Adamses' initial homeowner's policy with Cincinnati Insurance was terminated in July 2000, so they secured another policy through First Liberty Mutual Insurance Company ("Liberty"). However, on the Liberty policy, the first mortgagee was incorrectly listed as "Firstar" rather than BOA; the policy also incorrectly indicated that the first mortgagee was the payer of the premium.

BOA was notified that Cincinnati terminated the Adamses' policy but never received notice that the Adamses had secured a replacement policy. According to BOA records, notifications were sent to the Adamses in February and March of 2001 seeking assurances that they had secured homeowner's coverage. Receiving no response from the Adamses, BOA exercised its right under the mortgage and secured a homeowner's insurance policy through ACE Insurance ("ACE"). On April 23, 2001, ACE sent a notice to the Adamses indicating BOA had ordered homeowner's insurance ("forced policy").

Beginning in July 2001, BOA began billing the Adamses an additional $317.75 per month for the premium on the forced policy. However, instead of paying the increased amount, the Adamses sent only the regular monthly payment amount. BOA returned the payment as insufficient and advised the Adamses that it was imperative to contact the bank to resolve the problem.

Again in August 2001, the Adamses sent only the regular monthly payment, and BOA again reversed the payment as insufficient. BOA sent the Adamses a notice informing them their mortgage was in default and warning that if the default was not cured by September 26, 2001, BOA may exercise its right to foreclose on the loan.

BOA records show that between August 31 and September 19, 2001, Robert Adams was in contact with BOA regarding his account and the forced policy.[1] Adams

---

1. Julie Adams alleges her husband told her he called BOA in July 2001; however, no such

told the BOA representative that *he* consistently paid for his own homeowner's insurance policy and would provide proof of coverage. On September 5, 2001, BOA received confirmation that a homeowner's policy through Liberty was established in August 2000. BOA acknowledged the Liberty policy and cancelled the forced policy. However, BOA soon discovered that the Liberty policy listed the mortgagee as the payer, and consequently, BOA had been paying the premiums.[2] Since the Adamses had not been paying for the policy as required, BOA continued to bill the Adamses for the cost of coverage.

Without a resolution to the homeowner's insurance policy debt, BOA repeatedly reversed the Adamses' regular monthly payments as insufficient partial payments. On October 22, 2001, BOA sent the Adamses a letter stating they were three months behind and in default on their loan. BOA records indicate several unsuccessful attempts to contact the Adamses by telephone in November and December 2001.[3] By January 4, 2002, the Adamses' mortgage was ninety-five days delinquent.

On January 15, 2002, BOA sent the Adamses a letter informing them that their account had been referred to BOA's legal department, and on January 23, 2002, BOA's legal counsel informed the Adamses that foreclosure proceedings had begun. On February 8, 2002, a petition for foreclosure was filed in Scott County District Court. The Adamses secured legal counsel who contacted BOA. The Adamses continued to send the regular

monthly mortgage payment amount, which BOA continued to reverse as insufficient. On March 8, 2002, tragically, Robert Adams died of a heart attack. The foreclosure proceeded until July 2, 2002, when BOA filed a motion to dismiss without prejudice.

## II. PROCEDURAL HISTORY

On August 19, 2002, Julie Adams, individually and on behalf of the estate of Robert Adams, filed a six count petition in Scott County District Court against BOA, alleging breach of contract, bad faith breach of contract, slander of title, violation of the Fair Debt Collection Practices Act ("FDCPA") on behalf of Julie Adams, violation of the FDCPA on behalf of Robert Adams' estate, and a wrongful death claim.

On September 4, 2002, BOA filed a timely notice of removal, wherein BOA stated federal jurisdiction was proper pursuant to 28 U.S.C. § 1332 because the parties were diverse and the amount in controversy exceeded $75,000. BOA also asserted jurisdiction was proper pursuant to 28 U.S.C. § 1331 because a federal question was presented in Counts IV and V in which Plaintiff sought relief under the FDCPA, 15 U.S.C. § 1692.

On July 16, 2003, BOA moved for summary judgment on all counts. Subsequent to BOA's motion, on August 18, 2003, Julie Adams voluntarily moved to dismiss the slander of title claim. On October 11, 2003, BOA filed a motion for sanctions

---

call appears on BOA's call log in July.

**2.** In her deposition, Julie Adams stated that she has no personal knowledge and no records showing that she or her husband ever paid a premium to Liberty before July or August 2002. In fact, Liberty's renewal notice dated August 1, 2002, correctly listed BOA as the first mortgagee but still incorrectly listed BOA as payer of the premium.

**3.** BOA's records for December 4, 2001, indicate Robert Adams was advised of the delinquent balance and the foreclosure time frame. Robert Adams told BOA he could not talk at work and that he was having marital problems. He said he would call back the next day, but there is no record of a call. BOA's records show several subsequent unsuccessful attempts to reach Adams by telephone.

pursuant to Fed.R.Civ.P. 11, arguing, inter alia, that Adams lacked good faith *prior* to filing her complaint, and that *the claims were frivolous.* BOA further argued that Adams had all the facts necessary to know that BOA was not a debt collector within the meaning of the FDCPA at the time of filing and even alleged those facts in her complaint which rendered her claim under the FDCPA *frivolous.* BOA also argued the Adams "knew from day one" that the wrongful death claim was frivolous and that no court has ever allowed a wrongful death through foreclosure claim.

On October 14, 2003, while the motion for sanctions was pending,[4] Adams moved to dismiss both FDCPA claims, and on December 2, 2003, she moved to dismiss the wrongful death claim. The Court granted those motions, leaving only the bad faith breach of contract claims.

On April 19, 2004, the Court granted Defendant's request for a hearing on the pending motion for summary judgment and asked the parties to be prepared to discuss the issue of the Court's *supplemental* jurisdiction over the remaining state law claims. Both parties filed briefs on the issue.

BOA argues that the Court has *diversity* jurisdiction over the remaining claims, and therefore the Court need not determine whether to exercise supplemental jurisdiction. BOA asserts that the requirements for diversity jurisdiction, including the amount in controversy, were satisfied when this case was removed to federal court, and it is irrelevant that the potential recovery has decreased during the course of the litigation. Alternatively, BOA argues that should the Court find original jurisdiction lacking in the present case, supplemental jurisdiction would be appropriate because remanding the remaining

claims would delay the proceedings which have progressed far beyond discovery.

Plaintiff asserts the principles of economy, convenience, fairness, and comity will best be served by remanding this matter to the Scott County District Court. Plaintiff further asserts that diversity jurisdiction is lacking because BOA's maintenance of branch offices in the state of Iowa makes it an Iowa citizen for purposes of diversity jurisdiction, and therefore the parties are not diverse.

## III. DISCUSSION

On July 20, 2001, Adams filed this lawsuit in Scott County District Court, and on August 19, 2001, BOA removed the action to federal court. The proper procedure for removal of an action is set forth in 28 U.S.C. § 1441, which states in pertinent part,

(a) Except as otherwise expressly provided by Act of Congress, *any civil action brought in a State court of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

. . . . .

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the dis-

---

4. On November 5, 2003, in addition to the motion for Rule 11 sanctions, BOA moved for sanctions against Adams' attorney pursuant to 28 U.S.C. § 1927.

trict court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(a) (emphasis added).

At the time of removal, there were two causes of action alleged under the laws of the United States; no objection to this Court's jurisdiction was raised at the time of removal. In light of the apparent federal question jurisdiction, this Court made no assessment of the value of the claims for diversity jurisdiction purposes.[5] However, after Adams voluntarily dismissed four claims, including the federal question claims, the Court revisited the issue of subject matter jurisdiction over the remaining state law claims.

In its notice of removal, BOA alleged that federal jurisdiction was proper pursuant to 28 U.S.C. § 1332 (" § 1332") and 28 U.S.C. § 1331 (" § 1331"), alleging both diversity of citizenship and a federal question were present. Regarding the amount in controversy, BOA stated that Plaintiff sought in excess of $75,000. The Court agrees that federal question jurisdiction appeared proper at the time of removal but does not agree that the requirements of diversity jurisdiction were satisfied at that time. At this time, whether the Court retains or remands the case turns on whether this Court had diversity jurisdiction at the time of removal.

### A. Burden of Proving Federal Jurisdiction

 "When a defendant removes an action to federal court, such defendant has the burden of showing that the federal court has jurisdiction." *Bor–Son Bldg. Corp. v. Heller,* 572 F.2d 174, 182 n. 13 (8th Cir.1978) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S.

178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. 990C80656 v. Amoco Oil Co.,* 883 F.Supp. 403, 407 (N.D.Iowa 1995). The Court must resolve all doubts about federal jurisdiction in favor of remand. *In re Business Men's Assurance Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993); *Amoco,* 883 F.Supp. at 407. Only state court cases that could have originated in federal court may be removed. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Whether a case was properly removed is determined based on the plaintiff's pleadings at the time of removal. *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939); *Crosby v. Paul Hardeman, Inc.,* 414 F.2d 1, 3 (8th Cir.1969). Therefore, when removal is based on diversity of citizenship, the party arguing federal jurisdiction has the burden of showing both complete diversity and the amount in controversy existed at the time of removal.

### 1. Diversity of Citizenship

In the present case, Adams is resident of Iowa; BOA states that it is a North Carolina corporation with its principal place of business in California. Relying on 28 U.S.C. § 1348, Adams argues that BOA is a citizen of Iowa for purposes of diversity jurisdiction, and therefore diversity does not exist in the present case.

Title 28 U.S.C. § 1348 states in pertinent part,

The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association ... es-

---

**5.** As a matter of routine, this Court examines each new case at the time of initial filing to confirm a basis for federal jurisdiction. Once a basis for jurisdiction is identified, it is unnecessary at that point to challenge other alleged jurisdictional bases.

tablished in the district for which the court is held . . . .

All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizen of the States in which they are respectively located.

28 U.S.C. § 1348 (2000).

Two lines of cases have evolved interpreting the citizenship of a national banking association for the purposes of diversity jurisdiction under § 1348. *Compare Connecticut Nat'l Bank v. Iacono*, 785 F.Supp. 30, 34 (D.R.I.1992) (concluding the congressional intent behind § 1348 was to deem a national bank association a citizen of any state in which it maintains a branch office since "[e]xpanding the citizenship of national banking associations to include the locations of their branch offices serves to relieve some of the congestion in the federal courts"), *and Frontier Ins. Co. v. MTN Owner Trust*, 111 F.Supp.2d 376, 380 (S.D.N.Y.2000) (concluding the *Iacono* court's construction of § 1348 is consistent with Congress' intent to " 'modern trend of construing the diversity jurisdiction narrowly so as to relieve the congestion of federal courts.' ") (quoting *Bank of New York v. Bank of Am.*, 861 F.Supp. 225, 231 (S.D.N.Y.1994)), *with Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 993–94 (7th Cir. 2001) (discussing the statutory construction of § 1348 exhaustively, and holding "that for purposes of 28 U.S.C. § 1348 a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate."), *and Pitts v. First Union Nat'l Bank*, 217 F.Supp.2d 629, 631 (D.Md.2002) ("This Court finds the reasoning and analysis presented by the Seventh Circuit to be persuasive, and, in the absence of other binding authority, will follow the holding of *Firstar*.").

Since the *Firstar* decision was rendered in 2001, most district courts faced with this issue have followed the Seventh Circuit's reasoning. *See e.g., RDC Funding Corp. v. Wachovia Bank, N.A.*, 2004 WL 717111, at *2 (D.Conn. Mar. 31, 2004); *Pitts*, 217 F.Supp.2d at 631; *MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F.Supp.2d 606, 611 (D.Del.2003); *Carl v. Republic Sec. Bank*, 282 F.Supp.2d 1358, 1364 (S.D.Fla.2003); *Sec. First Network Bank v. C.A.P.S., Inc.*, 2003 WL 21877644, at *1 (N.D.Ill. Aug. 7, 2003); *Bank of Am., N.A. v. Johnson*, 186 F.Supp.2d 1182, 1183 (W.D.Okla.2001); *Cote v. Bank One, Texas, N.A.*, 2003 WL 23194260, at *6 (N.D.Tex. Aug. 1, 2003); *Bank One, N.A. v. Euro–Alamo Inv., Inc.*, 211 F.Supp.2d 808, 810 (N.D.Tex.2002).

However, in *Evergreen Forest Products of Georgia, LLC v. Bank of America, NA*, the district court deviated slightly from the Seventh Circuit's holding in *Firstar. Evergreen Forest Prods. of Ga., LLC v. Bank of America, NA*, 262 F.Supp.2d 1297, 1306 (M.D.Ala.2003). The court reasoned that since a national bank is not bound by state law, when its principal place of business is relocated, it is not required to amend its *original* certificate of organization, but it is required to amend its articles of association. *Id.* (citing 12 C.F.R. § 5.40(d)(2)). If the original certificate is used to determine a national bank's citizenship, and the bank changes its main office, it would still be deemed a citizen of a state in which it does not have significant contacts. *Id.* at 1307. The court concluded "that 28 U.S.C. § 1348 is best understood to mean that a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its most recent articles of association." *Id.*

 The reasoning articulated by the Seventh Circuit in *Firstar* is persuasive, as is the district court's caveat in *Evergreen Forest Products.* However, in the present case, the distinction is academic, since diversity exists whether the Court considers

BOA's principal place of business as set forth in its original certificate (California) or its current articles of association (North Carolina). The Court adopts the reasoning of the *Firstar* line of cases and disagrees with Adams' interpretation of § 1348. Interpreting § 1348 to mean a national bank is a citizen of every state in which it has a branch office would produce the anomalous result of limiting "access of national banks to federal courts to less than that afforded to state banks." *Id.* at 1307. For the stated reasons, the Court finds complete diversity of citizenship existed at the time this case was filed and removed.

### 2. Amount in Controversy

Diversity jurisdiction also requires that the amount in controversy be in excess of $75,000. 28 U.S.C. § 1332(a) (2000). The amount recoverable is determined at the time the action is filed, and subsequent changes do not oust federal court jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). However, at issue in the present case is whether at the time of filing and removal, the jurisdictional amount was satisfied. *See McCorkindale v. Am. Home Assurance Co./A.I.C.*, 909 F.Supp. 646, 650–51 (N.D.Iowa 1995).

■ To prove the amount in controversy, the proponent of jurisdiction is required to show by a preponderance of the evidence "a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir.2002); *Halsne v. Liberty Mut. Group*, 40 F.Supp.2d 1087, 1089–90 (N.D.Iowa 1999) ("Instead of the 'legal certainty' test, which might otherwise obtain, the defendant is required to prove by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.") (footnote omitted).[6]

---

**6.** The Supreme Court first articulated the "legal certainty" test in *St. Paul Mercury Indemnity Co.*, 303 U.S. at 289, 58 S.Ct. 586. In *St. Paul Mercury Indemnity*, the plaintiff pleaded $4000 in damages in her original complaint, which was in excess of the then jurisdictional amount in controversy of $3000. After removal, the complaint was amended, and claimed damages fell well below the jurisdictional amount. *Id.* at 285, 58 S.Ct. 586. The Court determined that events subsequent to removal did not oust the federal court's jurisdiction. *Id.* at 289, 58 S.Ct. 586.

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. *But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.* Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*Id.* at 289–90, 58 S.Ct. 586 (emphasis added) (footnotes omitted) (citations omitted).

The present case is distinguishable from *St. Paul Mercury Indemnity*. Here, there is no amount claimed in the original petition; therefore, the legal certainty test is inapplicable. *See McCorkindale*, 909 F.Supp. at 651 (distinguishing *St. Paul Mercury Indemnity*, reasoning, "there is no claim on the face of the original complaint for an amount in excess of the jurisdictional amount which must

In the present case, the amount in controversy cannot be ascertained from the face of the complaint since Iowa law does not allow specified damages, and therefore, Adams merely alleged "damages in excess of $5,000.00."[7] BOA argues by the mere fact that Adams alleged a wrongful death claim and punitive damages in her complaint, the amount in controversy was satisfied since *potential* recovery on either would satisfy the amount.

The Court disagrees. First, the claim must be *legally* recoverable not merely alleged. *Kopp*, 280 F.3d at 885 ("In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it."). Here, a fact finder could not award damages for wrongful death because such a claim was not legally recoverable under the facts of this case at the time Adams filed the lawsuit. BOA argued this in both its motion for summary judgment and its motion for sanctions. Adams conceded as much by voluntarily dismissing the claim.[8]

Second, "[w]hen determining the amount in controversy, we scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure that Congress' limits on diversity jurisdiction are properly observed." *State of Mo. ex rel. Pemiscot County, Mo. v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995). A fact finder could not legally award punitive damages in the amount necessary to met the amount in controversy. The only ascertainable damages Adams alleges are the attorney fees and costs incurred in defending the foreclosure action. Even if the Court were to assume that punitive damages were available, the amount a fact finder could legally award Adams without violating due process would not meet the amount in controversy. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process.").

For the above stated reasons, the Court finds that BOA has not met its burden of showing the amount in controversy was satisfied; therefore, diversity jurisdiction was lacking at the time of removal. Re-

---

therefore be overcome to a 'legal certainty' in order to defeat removal.").

7. The Iowa Rule of Civil Procedure states in pertinent part,

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or cross-petition, shall contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the type of relief sought.... *Except in small claims and cases involving only liquidated damages, a pleading shall not state the specific amount of money damages sought but shall state whether the amount of damages meets applicable jurisdictional requirements for the amount in controversy.* The specific amount and elements of monetary damages sought may be obtained through discovery. Iowa R. Civ. P. 1.403(1) (2003) (emphasis added); see also Iowa Code § 619.18 (2003)

("In an action for personal injury or wrongful death, the amount of money damages demanded shall not be stated in the petition .... However, a party filing the petition ... shall certify to the court that the action meets applicable jurisdictional requirements for amount in controversy."). A claim for less than five thousand dollars constitutes a small claims action. Iowa Code § 619.18 (2003). Parties avoid small claims court while also satisfying Rule 1.403, by merely pleading damages in excess of $5000.

8. BOA argues that the Court validated the wrongful death claim by denying its motion for sanctions. In denying sanctions, United States Magistrate Judge Shields stated, "[t]he allegations in [the wrongful death claim] border on being frivolous; at the least they stretch common sense to a breaking point." Although Judge Shields did not award sanctions, his order clearly does not validate the wrongful death claim.

moval was proper pursuant solely to § 1441 on the basis of a federal question. Adams' subsequent dismissal of those claims eliminated that basis of federal jurisdiction. The remaining claims are for breach of contract based on state law. Although the Court has not been divested of jurisdiction over the remaining state law claims, under § 1367, the Court has discretion whether to exercise supplemental jurisdiction over those claims or remand them to state court.

### B. Supplemental Jurisdiction

▇ Title 28 U.S.C. § 1367 provides in pertinent part,

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (2000). "Under §§ 1367(c) and 1441(c), a court is not required to remand state law claims when the only federal claim has been dismissed. Instead, the district court maintains discretion to either remand the state law claims or keep them in federal court." *Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir.2002).

BOA argues the Court should retain jurisdiction to best serve "the principles of economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). For precisely the same reasons, Adams argues the Court should remand the case. BOA argues the case has proceeded to less than a month before trial and remanding the case would delay the proceedings. BOA also suggests that the most important factor the Court should consider is the amount of judicial time and resources expended in the case.

In *Carnegie–Mellon Univ. v. Cohill,* the Supreme Court reasoned that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n. 7, 108 S.Ct. 614. That is the case before this Court. The Court is not compelled by BOA's argument that a substantial amount of *judicial* time and resources have been expended on this case. While the Court has been required to referee disputes between the parties, this case has come to this Court and will leave this Court as a result of the parties' own conduct. BOA removed this case to federal court only to argue that Adams had no good faith basis for bringing *any* of her claims, including her federal question claims. In the face of sanctions, Adams conceded this point by dismissing her offending claims. Under the circumstances,

the Court does not find the exercise of supplemental jurisdiction is appropriate.

## IV. CONCLUSION

This Court recognizes its role as a court of limited jurisdiction. For the foregoing reasons, the Court finds no compelling reason to exercise supplemental jurisdiction over the remaining state law contract claims. The case is hereby **remanded** to the Iowa District Court for Scott County, pursuant to 28 U.S.C. § 1367(c)(3). Defendant's Motion for Summary Judgment (Clerk's No. 9) and Plaintiff's Motion to Strike (Clerk's No. 32) are **denied as moot**.

**IT IS SO ORDERED.**