Nancy OLSON, et al., Plaintiffs,

v.

**WELLS FARGO BANK, N.A.,
et al., Defendants.**

Case No. CV 13–2906–GHK (AGRx).

United States District Court,
C.D. California.

Aug. 1, 2013.

David S. Olson, Jonathan L. Smoller, Clark and Trevithick, Los Angeles, CA, for Plaintiffs.

Dean A. Reeves, Anglin Flewelling Rasmussen Campbell and Trytten LLP, Pasadena, CA, for Defendants.

## MEMORANDUM AND ORDER RE: PLAINTIFFS' MOTION TO REMAND

GEORGE H. KING, Chief Judge.

On March 18, 2013, Plaintiffs Nancy and David Olson ("Plaintiffs") filed this action in Los Angeles County Superior Court. The Complaint alleges only state law claims. On April 24, 2013, Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("Bank of America," and collectively with Wells Fargo, "Bank Defendants") removed this action to this court.[1] The Notice of Removal ("NOR") asserts that we have subject matter jurisdiction based on diversity of citizenship. (NOR at 2 [Dkt. No. 1]).[2]

This matter is now before us on Plaintiffs' Motion to Remand ("Motion"). We have considered the papers filed in support of and in opposition to the Motion and the Parties' arguments at the June 24, 2013 hearing. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

## I. Background

Plaintiffs are citizens of California, their state of domicile. (NOR at 2–3). Defendant Wells Fargo is a citizen of South Dakota, where its main office is located. *Wachovia Bank v. Schmidt,* 546 U.S. 303, 307, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006) (holding that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located"). Wells Fargo's principal place of business is in San Francisco, California.[3] Whether that means Wells Fargo is also a citizen of California

---

1. Defendant NDEX West, LLC ("NDEX" and collectively with Bank Defendants, "Defendants") did not join the Notice of Removal ("NOR"), which claimed that NDEX should be disregarded for diversity purposes because it was fraudulently joined. *See AGI Pub., Inc. v. HR Staffing, Inc.,* 2012 WL 3260519, *2 (E.D.Cal.2012) ("Nominal, unknown, or fraudulently joined defendants are exempt from the general rule, and do not need to consent to a removal." (citation omitted)). NDEX has since joined Bank Defendants' opposition to the Motion to Remand and has filed a Joint Stipulation regarding its nonmonetary status. [Dkt. Nos. 19 & 21]. We entered an order on NDEX's non-monetary status on May 30, 2013.

2. One of Plaintiffs' state law claims is for alleged violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), which refers to the federal Fair Debt Collection Practices Act. However, this reference is insufficient to vest us with federal question jurisdiction because "such references are inevitable as the California legislature incorporated portions of the FDCPA into its law." *Ortega v. HomEq Servicing,* 2010 WL 383368, *5 (C.D.Cal.2010) (Morrow, J.) "Since the provisions are incorporated in and made part of state law, referencing the federal statute does not automatically transform [the] RFDCPA claim into a federal claim." *Id.* (citing *Britz v. Cowan,* 192 F.3d 1101, 1103 (7th Cir.1999) (Posner, J.) (explaining that "a state cannot expand federal jurisdiction by deciding to copy a federal law")). Perhaps recognizing this authority, Defendants do not assert federal question jurisdiction on this removal.

3. Plaintiffs assert in their moving papers that Wells Fargo's principal place of business is in California. (Mot. at 5). Wells Fargo does not

(which would defeat complete diversity) is the subject of the dispute on this Motion. Bank of America is a citizen of North Carolina, where its main office is located. (NOR at 8–9).[4] NDEX is a citizen of Delaware, Texas, Michigan, and Minnesota. (NOR at 9–11).

## II. Legal Standard

 In general, a defendant may remove a case over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Here, the purported basis for original jurisdiction is diversity of citizenship. 28 U.S.C. § 1332(a). Diversity jurisdiction generally requires "complete diversity," i.e., "each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008). The removing party bears the burden of establishing federal subject matter jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Further, "[w]e strictly construe the removal statute against removal jurisdiction.... Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citations omitted).

## III. Discussion

The question before us is whether Wells Fargo is a citizen of California. Under § 1348, "[a]ll national banking associations shall ... be deemed citizens of the States in which they are respectively located."

28 U.S.C. § 1348. The issue is whether Wells Fargo is "located" in California, the state of its principal place of business.

Plaintiffs argue that Ninth Circuit authority, *American Surety Co. v. Bank of California*, 133 F.2d 160 (9th Cir.1943), requires us to hold that Wells Fargo is a citizen of the state in which its principal place of business is located. In any event, they assert that we should interpret the term "located" to include a national bank's principal place of business because Congress intended that term to give national banks the same access to the federal courts as state banks and corporations, which today have principal place of business citizenship. 28 U.S.C. § 1332(c)(1). Defendants respond that *American Surety* is not binding because it is clearly irreconcilable with Supreme Court authority, and that Congress meant the term "located" to give national banks the same access to the federal courts as state banks and corporations had in 1948, when Congress last amended § 1348. At that time, state banks and corporations were citizens only of their states of incorporation. Hence, under § 1348, Wells Fargo is a citizen of only a single state, where its main office is located. We address these arguments in turn below.

### A. American Surety Co. v. Bank of California

*American Surety* interpreted the 1911 statute, which contained material language

argue otherwise in its opposition. It is therefore deemed to have conceded that its principal place of business is in California. *See* L.R. 7–12; *Richter v. Mutual of Omaha Ins. Co.*, 2007 WL 6723708, *5 (C.D.Cal.2007). Further, Wells Fargo has admitted in other actions that California is its principal place of business. *Miles v. Wells Fargo Mortgage Co.*, No. 06–cv1991–EMC (N.D.Cal. July 31, 2006) (Answer ¶ 5 (admitting that "Wells Fargo Bank, N.A. has its principal place of business in San Francisco, with its main office in Sioux Falls, South Dakota")).

4. The NOR does not state the principal place of business of Bank of America, N.A., the national bank (which we refer to as "Bank of America," above). Instead, the NOR states that non-party "Bank of America Corporation" is organized under the laws of Delaware and has its principal place of business in North Carolina. (NOR at 8–9). Because we conclude that Wells Fargo's citizenship defeats complete diversity, Bank of America's principal place of business is immaterial.

identical to § 1348: national banks shall "be deemed citizens of the States in which they are respectively located." *American Surety*, 133 F.2d at 161–62. Unlike here, the issue in that case was whether "located" means that a national bank is a citizen of each state in which the bank has a branch office. *Id.* The court held that defendant, a national bank, was a "citizen *only* of the state in which its principal place of business [was] located." *Id.* at 162 (emphasis added). The court explained that "[t]here would appear to be a close analogy between such a bank and a corporation national in scope. The citizenship of a corporation is fixed by its principal place of business." *Id.* Hence, national banks should be treated the same way. Further, "[i]f the Congress had intended to provide that a national banking institution should be given the privilege and should carry the duties of citizenship in various states upon the basis of branch business offices being established therein, it would be a noteworthy departure from the general rule, and more likely than not Congress would have plainly state[d] such intent." *Id.*

Plaintiffs urge a literal reading of the court's use of "principal place of business" to support their argument that our issue is foreclosed by this purportedly binding authority. We disagree. *American Surety* cannot be read without regard to its context or the authorities cited therein. Given the issue that the court confronted, as well as the authorities it cited in support of its holding, we conclude that the court used "principal place of business" interchangeably with "state of incorporation." *See Rouse v. Wachovia Mortg., FSB*, 2012 WL 174206, *8 (C.D.Cal.2012) (explaining that *American Surety's* "linkage between a corporation's citizenship and its principal place of business, rather than an erroneous exposition of the law, reflected [the court's] failure to consider the case where a corporation's principal place of business was not in its state of incorporation"). This is borne out by the authorities the court cited for its holding, none of which referred to "principal place of business" as the test for corporate citizenship. *See St. Louis & S.F. Ry. Co. v. James*, 161 U.S. 545, 562, 16 S.Ct. 621, 40 L.Ed. 802 (1896) (explaining that "[t]here is an indisputable legal presumption that a state corporation, when sued or suing in a circuit court of the United States, is composed of citizens of the state which created it"); *Southern Ry. Co. v. Allison*, 190 U.S. 326, 338, 23 S.Ct. 713, 47 L.Ed. 1078 (1903) (explaining that "it will be conclusively presumed, as a matter of law, that [corporations] are citizens of the state originally chartering it"). In the context of the dispute that it was resolving, *American Surety* likely conflated the concepts of state of incorporation and principal place of business. Under this reading, *American Surety* held that national banks are not citizens of every state where a branch office is located because they should have citizenship analogous to a corporation's state of incorporation.

On the other hand, were we to adopt Plaintiffs' literal reading of the court's use of the phrase "principal place of business" as having the meaning now embodied in 28 U.S.C. § 1332(c)(1), *American Surety* would still not control our decision because it would be clearly irreconcilable with *Wachovia Bank v. Schmidt*, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). In general, "where intervening Supreme Court authority is clearly irreconcilable with ... circuit authority ... district courts should consider themselves bound by the intervening higher authority and reject the prior opinions of [the circuit court] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc).

While addressing the question of whether a national bank is located in the state of its main office or in every state in which it maintains a branch office, *Schmidt* held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Schmidt*, 546 U.S. at 306, 126 S.Ct. 941. But the court had no occasion to decide whether a national bank is only located in the state of its main office, especially since Wachovia Bank has its main office and its principal place of business in the same state. *Id.* at 317 n. 9, 126 S.Ct. 941. Thus, *American Surety* cannot be read to hold literally that a national bank is a citizen *only* of the state of its principal place of business without being in irreconcilable conflict with Supreme Court authority.

In any event, *American Surety* does not answer our question. Either it goes no farther than *Schmidt*, or *Schmidt* abrogates it. While we know that a national bank is a citizen of at least the state where it has its main office, we must still decide whether a national bank is also a citizen of the state of its principal place of business.

In that regard, *American Surety* is helpful because it is still good law for the general principle that in analyzing where a national bank is "located," we draw a "close analogy" between national banks on the one hand, and state banks and corporations, on the other, because all of these entities should have the same access to the federal courts. *Martinez v. Wells Fargo Bank*, 946 F.Supp.2d 1010, 1018, 2013 WL 2237879, *7 (N.D.Cal.2013) (explaining that "the thrust of [*American Surety's* ] analy-

sis was predicated on jurisdictional parity between national banks and corporations"); *see Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (explaining that lower courts are "bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis' "). We refer to this concept as "jurisdictional parity," an issue we discuss at length below.

### B. Jurisdictional Parity

Because there is no binding Supreme Court or Ninth Circuit authority on whether a national bank is a citizen of the state where its principal place of business is located, we must interpret the language of § 1348.[5] The statute does not define the term "located." As *Schmidt* explained, " 'located' is not a word of 'enduring rigidity' ... but one that gains its precise meaning from context." 546 U.S. at 306, 126 S.Ct. 941. Accordingly, we begin with a close review and analysis of § 1348's legislative history and judicial interpretations.

#### 1. The Legislative History and Policies of § 1348

Although § 1348 was enacted in 1948, it had many predecessor versions. In 1863, national banks automatically had access to federal courts simply because they were national banks. *Schmidt*, 546 U.S. at 309–10, 126 S.Ct. 941. State banks and other state incorporated entities, by contrast, could only sue or be sued in federal court based on federal question or diversity jurisdiction. *Id.* In 1882, Congress eliminated automatic federal jurisdiction over national banks. *Id.* In particular, the 1882 statute provided that federal jurisdiction

---

**5.** The Eighth Circuit is the only appellate court to have directly addressed the issue before us. *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702 (8th Cir. 2011). We discuss *WMR* at length below. In addressing the distinct issue of whether a national bank is a citizen of every state where

a branch office is located, other circuit courts have stated in dicta that a national bank is a citizen of the state of its principal place of business. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir.2001); *Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir.2004).

over national banks "shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States." *Id.* In 1887, Congress removed the "same as" language and first stated that national banks shall "be deemed citizens of the States in which they are respectively located." *Id.* at 310–11, 126 S.Ct. 941.

The 1887 version stated:

[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real personal or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

*Id.* (emphasis removed). In 1911, Congress removed the language that "circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State," but the operative language that national banks are citizens of the states in which they are located remained unchanged. *See id.; Herrmann v. Edwards,* 238 U.S. 107, 113, 35 S.Ct. 839, 59 L.Ed. 1224 (1915). Finally, in 1948 Congress passed § 1348, again retaining the same language regarding the citizenship of a national bank. Section 1348 has remained unchanged since 1948.

Before and since 1948, the Supreme Court has read the "located" language in each of the predecessor and current statutes as establishing the Congressional goal of jurisdictional parity between national banks and state banks and corporations. Beginning in 1887, the Court recognized that the purpose of eliminating automatic federal jurisdiction over national banks was to put them "on the same footing as the banks of the state where they were located for all the purposes of the jurisdiction of the courts of the United States." *Leather Manufacturers' Nat. Bank v. Cooper,* 120 U.S. 778, 780, 7 S.Ct. 777, 30 L.Ed. 816 (1887). It reaffirmed this view even after Congress replaced the 1882 statute's "same as" language with the 1887 and subsequent statutes' "located" language. *See Petri v. Commercial Nat. Bank,* 142 U.S. 644, 650, 12 S.Ct. 325, 35 L.Ed. 1144 (1892) (explaining that "[n]o reason is perceived why it should be held that congress intended that national banks should not resort to federal tribunals as other corporations and individual citizens might"); *Continental Nat. Bank v. Buford,* 191 U.S. 119, 123–24, 24 S.Ct. 54, 48 L.Ed. 119 (1903) ("The necessary effect of [the 1882 and 1887] legislation was to make national banks, for purposes of suing and being sued in the circuit courts of the United States, citizens of the states in which they were respectively located, and to withdraw from them the right to invoke the jurisdiction of the circuit courts of the United States simply upon the ground that they were created by, and exercised their powers under, acts of Congress. No other purpose can be imputed to Congress than to effect that result."); *Federal Intermediate Credit Bank of Columbia v. Mitchell,* 277 U.S. 213, 216, 48 S.Ct. 449, 72 L.Ed. 854 (1928) ("[N]ational banks were by the acts of 1882 and 1887 put on the same basis in respect of jurisdiction as if they had not been organized under an act of Congress, and that as to such suits federal incorporation was not a ground for jurisdiction").[6]

Although the 1911 statute deleted the language that "circuit and district courts

---

**6.** Although *Mitchell* was decided in 1928, it did not address the 1911 predecessor statute.

shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State," the Court did not waver in its view that jurisdictional parity had not been disturbed. *See Herrmann v. Edwards,* 238 U.S. 107, 111–14, 35 S.Ct. 839, 59 L.Ed. 1224 (1915) (reaffirming in interpretation of 1911 statute the longstanding principle that "because a corporation was a national bank, created under an act [of] Congress, gave it no greater right to remove a case than if it had been organized under a state law"). Further, *American Surety* also interpreted the 1911 predecessor statute and clearly applied jurisdictional parity when it noted the "close analogy" between corporations and national banks. *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC,* 653 F.3d 702, 716 (8th Cir.2011) (Murphy, J., dissenting) (explaining that in 1948, *American Surety* was the only circuit opinion that considered the meaning of the term "located" in § 1348's predecessor statute).

Nor did the Supreme Court deviate from its long-held and consistent view of jurisdictional parity even with the enactment of § 1348 in 1948. *See Mercantile Nat. Bank at Dallas v. Langdeau,* 371 U.S. 555, 565–66, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) (distinguishing the "Act of 1882 *and its successors,*" including § 1348, from venue statute by noting that "the 1882 Act and the 1887 Act were designed to overcome the effect of [prior statutes,] which allowed national banks to sue and be sued in the federal district and circuit courts solely because they were national banks[, and] apparently sought to limit ... the access of national banks to ... the federal courts to the same extent to which non-national banks are so limited") (emphasis added).

Given this judicial context, we conclude that Congress intended to continue juris-dictional parity when it enacted § 1348 with the same material language as the 1887 and 1911 predecessors. *See Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change."). Congress is presumed to have known that courts had consistently held that the purpose of § 1348's predecessors was to create jurisdictional parity. Congress is also presumed to know that *American Surety* had interpreted the ambiguous term "located" in a predecessor statute by drawing a "close analogy" between corporations and national banks to conclude that they should be treated the same way. *See Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 988 (7th Cir.2001) ("Congress passed 28 U.S.C. § 1348 against an interpretive background which assumed that national banks were to have the same access to the federal courts as state banks and corporations."); *Horton v. Bank One, N.A.,* 387 F.3d 426, 436 (5th Cir.2004) ("We construe section 1348 in light of Congress's intent to maintain jurisdictional parity between national banks on the one hand and state banks and corporations on the other.").

### 2. The 1958 Amendment to 28 U.S.C. § 1332(c)(1)

We acknowledge that in 1948, corporations were citizens of only the state of their incorporation, and jurisdictional parity would have been achieved by treating national banks as citizens of only one state. Ten years later, Congress enacted dual citizenship for corporations under § 1332(c)(1). In light of this change to corporate citizenship in 1958, our task is to determine whether Congress intended the term "located" to enact jurisdictional parity as of 1948, regardless of any subsequent changes in how corporations are treated

("static parity") or whether Congress intended the term to incorporate any changes, such that national banks would remain "on the same footing" as corporations even if the rules for corporations changed ("dynamic parity").

Given the extensive judicial background that the purpose of the predecessor statutes was to put national banks on the same footing as state banks and corporations, we conclude that Congress intended to enact dynamic parity. Moreover, the policy behind jurisdictional parity had not changed by 1948, or even by 1958 for that matter. Congress established jurisdictional parity because national banks should not have preferential access to the federal courts as compared to corporations and state banks. There is no reason to conclude that the policy of parity applies less today than it did in 1948 or at any of the many other times when courts have reaffirmed that parity is the point of § 1348's predecessors. An analysis of the policies of diversity jurisdiction and principal place of business citizenship, as well as the legislative history of § 1332(c), confirms this conclusion.

Congress enacted dual citizenship for corporations in 1958. *Schmidt,* 546 U.S. at 306, 126 S.Ct. 941. Under § 1332(c)(1), a corporation is a citizen of every state "by which it has been incorporated and of the State ... where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Prior to 1958, corporations were citizens only of their states of incorporation. *Schmidt,* 546 U.S. at 306, 126 S.Ct. 941; *see generally Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 1187–89, 175 L.Ed.2d 1029 (2010) (discussing legislative history of dual citizenship amendment). Although Congress did not amend § 1348 when it created dual citizenship for corporations, we conclude that if Congress intended to abrogate parity in 1958, it would have so stated.

■ First, an analysis of the enduring policies of diversity jurisdiction and dual citizenship confirms our conclusion that Congress intended to continue jurisdictional parity in 1958. "[D]iversity jurisdiction's basic rationale" is providing a federal forum "to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz Corp.,* 130 S.Ct. at 1188. Congress thus extended citizenship to corporations in their principal places of business in part because under the prior state of incorporation rule, a corporation could access federal courts "in a State where it conducted nearly all its business," even though such corporation plainly would not suffer outsider bias in that state. *Id.* (citing *Black and White Taxicab & Transfer Co. v. Brown and Yellow Taxicab & Transfer Co.,* 276 U.S. 518, 522–25, 48 S.Ct. 404, 72 L.Ed. 681 (1928) (refusing to question corporation's reincorporation motives and finding diversity jurisdiction)); *see also Co–Efficient Energy Systems v. CSL Industries, Inc.,* 812 F.2d 556, 558 (9th Cir.1987) ("This fiction of stamping a corporation a citizen of the State of its incorporation has given rise to the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another state." (quoting § 1332's legislative history)). This rationale applies equally to a national bank, which will not suffer outsider bias in the state where its principal place of business is located. The present case demonstrates this point with particular force. "Wells Fargo is an iconic California institution. It admittedly maintains its principal place of business in California. There is little possibility that Wells Fargo will be viewed as an outsider when litigat-

ing in California courts." *Vaughn v. World Savings Bank FSB*, Case No. 11–CV–6999–DMG (JEM), Order Remanding Action, at 3 (C.D.Cal. March 7, 2012).

Another related policy of dual citizenship is "to prevent frauds and abuses" whereby a corporation deliberately manipulates its place of incorporation to contrive federal jurisdiction. *Hertz Corp.*, 130 S.Ct. at 1189. This policy also applies equally to national banks because they can establish a main office in a state different from where they have their principal place of business. Such a possibility opens the door to shopping for a federal forum in a state where a national bank plainly will not face outsider bias, precisely the risk Congress intended to reduce with dual citizenship.

Second, that Congress did not make a like change to Section 1348 when it enacted Section 1332(c)(1) is explained by the respective authority governing citizenship of national banks as opposed to state banks or corporations. The legislative history shows that in 1958, Congress enacted dual citizenship to abrogate the "virtually absolute" rule at that time that corporations were citizens only of their states of incorporation. *Hertz Corp.*, 130 S.Ct. at 1188.[7] There is and has been no comparable "absolute" rule for national banks. Rather, the rule for national banks is that they are citizens of the states in which they are "located." 28 U.S.C. § 1348. But "located" is a "chameleon word" whose "meaning depends on the context in and purpose for which it is used." *See Schmidt*, 546 U.S. at 318, 126 S.Ct. 941. As other courts have also recognized, "[t]he language of § 1348 and its predecessor[s] in 1887 and 1911—'in which they are respectively located'—is not static (as would be if

the statute simply stated, *e.g.*, 'the location of the bank's main office') but elastic enough to incorporate evolving changes in the law." *Martinez*, 946 F.Supp.2d at 1020, 2013 WL 2237879, *10. To effectuate the purpose of the 1958 amendment, Congress had to expressly change the law to abrogate the absolute rule of single citizenship for corporations. By contrast, Congress did not have to change the elastic term "located" in order to maintain the long-understood policy of jurisdictional parity.

Taken together, the legislative histories of § 1348 and § 1332(c)(1) and the policies of diversity jurisdiction and dual citizenship strongly support our conclusion that Congress intended to continue jurisdictional parity between national banks and corporations. We do not see why Congress would eliminate diversity jurisdiction for corporations in the states of their principal place of business while preserving it for national banks. It is highly unlikely that Congress would have intended to abrogate the status quo by establishing jurisdictional *disparity* plainly inconsistent with the judicial background and the policies of diversity jurisdiction. Had Congress intended such an odd result, it would have so stated; yet it expressed no such intent. We decline to conclude that, by its silence, Congress intended to abandon not only more than six decades of jurisprudence, but also the very purposes for limiting diversity jurisdiction that animated the 1958 amendment.

In light of the foregoing, we conclude that a national bank is also located in the state of its principal place of business. Wells Fargo therefore is a citizen of Cali-

---

7. The absolute "state of incorporation" rule was judicially created to define the citizenship of corporations for diversity purposes. *Hertz* *Corp.*, 130 S.Ct. at 1187–89 (discussing history of corporate citizenship).

fornia, and complete diversity does not exist in this case.[8]

## C. Defendants' Arguments

### 1. *Wachovia Bank v. Schmidt*

While recognizing that it does not control our decision on this motion, Wells Fargo makes various arguments based on *Schmidt*. First, it asserts that the Supreme Court "expressed skepticism" at the use of a national bank's principal place of business as a basis for citizenship. *See Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312, 317 (S.D.N.Y.2006) (concluding that "the fairest reading of footnote nine is that the Supreme Court expressed skepticism over whether the term 'located' in § 1348 included a national bank's 'principal place of business,' in view of the absence of such term in the statute"). Footnote 9 of *Schmidt* reads in full as follows:

To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. *See Horton*, 387 F.3d, at 431, and n. 26; *Firstar Bank, N.A.*, 253 F.3d, at 993–994. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for in almost every case, as in this

**8.** Wells Fargo has argued before other courts that "[t]here is ... no basis for concern that national banks will seek to relocate their main offices in order to expand the scope of federal jurisdiction." *Rouse v. Wachovia Mortgage, FSB*, Case No. 12–55278, Opening Brief at 36, 2012 WL 4364819 (9th Cir.2012). One argument is that moving a national bank's office raises a "host of complex issues" apart from jurisdiction, such as the maximum interest rates the bank can charge. (*Id.*) But a corporation faces a similar host of issues apart from jurisdiction when it decides to reincorporate. *Compare* Cal. Corp.Code § 600(d) (special meetings may be called by shareholders "entitled to cast not less than 10 percent of the votes at the meeting"); Cal. Corp.Code §§ 301.5, 708, 708.5 (cumulative voting required in director elections unless corporation is a "listed corporation" and opts out of cumulative voting by amendment to articles or bylaws) *with* Del. Gen. Corp. Law § 211(d) (special meetings may be called as "authorized by the certificate of incorporation or by the bylaws"); Del. Gen. Corp. Law §§ 214 & 216(3) (plurality voting in director elections is default, but the certificate of incorporation may provide for cumulative voting). Because non jurisdictional issues may

dissuade both corporations and national banks from changing their citizenship, this is no basis to treat them differently. Another argument is that it is difficult for a national bank to move its main office to a different state because it usually can only do so in the case of an interstate merger, "when a bank can select a main office or branch of either of the merging banks as a main office." *Rouse v. Wachovia Mortgage, FSB*, Case No. 12–55278, Opening Brief at 36, 2012 WL 4364819 (9th Cir.2012) (citing 12 U.S.C. § 1831u(d)(1)). We question whether this is a significant impediment inasmuch as interstate mergers are hardly unusual. Indeed, Wells Fargo effected just such a change in its main office by way of such merger. But, even if it is difficult for a national bank to change its main office, a national bank could still, at its founding, deliberately establish a main office in a state other than its principal place of business. This too is a form of jurisdictional manipulation. Finally, regardless of whether national banks are less able to manipulate their citizenship, the primary policy of diversity jurisdiction is to prevent outsider bias. As discussed above, this policy clearly supports treating a national bank as a citizen of the state of its principal place of business.

one, the location of a national bank's main office and of its principal place of business coincide.

546 U.S. at 317 n. 9, 126 S.Ct. 941.

Footnote 9 is at most non-binding dicta because it concerned an issue not presented to the Court. *Schmidt* rejected branch office citizenship and held that a national bank is a citizen of the state where its main office is located. But *Schmidt* did not purport to hold that a national bank's main office is the exclusive basis for its citizenship. On the contrary, the Court noted the principal place of business issue but declined to express an opinion on it because it was "not presented by the parties or necessary to today's decision." *Id.* at 315 n. 8, 126 S.Ct. 941. Regardless, we do not think that footnote 9 implicitly casts doubt on jurisdictional parity or principal place of business citizenship for national banks.

Footnote 9 cited, without any hint of disapproval, two circuit cases rejecting branch office citizenship but stating that a national bank is a citizen of *both* the state of its main office and its principal place of business. *See Horton*, 387 F.3d at 435–36 (stating "that the definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of

association"); *Firstar*, 253 F.3d at 993–94 (concluding "that for purposes of 28 U.S.C. § 1348 a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate"). Second, the footnote merely discusses what would be required for complete parity and the obvious differences in the language of § 1348 and § 1332. It concludes by noting that the principal place of business issue may be of scant practical significance.[9] *See also Martinez*, 946 F.Supp.2d at 1016, 2013 WL 2237879, *5 (noting that in footnote 9, "the Court did not conclude that the difference in language was meant to overturn a decades long policy of jurisdictional parity").

Defendants also appear to argue that *Schmidt* does not require "precise" parity. (Opp. at 17). They point out that *Schmidt* appears to reject the branch office rule in part because of the extent of the jurisdictional disparity it would create (i.e., 16 states of citizenship for the bank but only two for a corporation). 546 U.S. at 317, 126 S.Ct. 941. As other courts have noted, however, "the analytical thrust behind the Supreme Court's holding ... was to preserve parity between national banks on the one hand, and local banks and corporations on the other." *Martinez*, 946 F.Supp.2d at 1015, 2013 WL 2237879, *4. For example,

---

**9.** This case, of course, reveals the immense practical significance for a national bank whose principal place of business does *not* coincide with the state of its main office. As Plaintiffs point out, Wells Fargo apparently has 823 offices in California—over a hundred more than it has in any other state. *See* ATM and Banking Locations, <https://www.wellsfargo.com/locator/> (last accessed July 30, 2013). Hence, treating Wells Fargo as a citizen of California will affect the forum for everything from slip and falls in Wells Fargo's 823 branches to cases such as this one, where California homeowners with whom Wells Fargo does business allege wrongdoing. In addition, treating Wells Fargo as a citizen of Cali-

fornia will also affect the forum for claims an out of state plaintiff asserts in California state court. *See* 28 U.S.C. § 1441(b)(2) (A diversity case "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). A similarly situated corporation, of course, would be treated as a citizen of California. These significant practical effects underscore our point that Congress more likely intended courts to apply § 1348 to preserve jurisdictional parity, as they had done in the past, to avoid significant disparities between a national bank's and a corporation's access to the federal courts.

the Court explained that if it endorsed branch office citizenship, "the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities. Congress, we are satisfied, created no such anomaly." 546 U.S. at 307, 126 S.Ct. 941. This reasoning shows that the principle of jurisdictional parity remains the most important analytical tool in interpreting the term "located" in § 1348.[10] *Schmidt* does not stand for the proposition that § 1348 establishes parity only when an alternative rule would create a disparity in citizenship as large as 16 to 2. Nor does it stand for the proposition that § 1348 establishes imprecise parity.[11] On the contrary, *Schmidt* reflects the continued vitality of jurisdictional parity in analyzing the term "located" in § 1348.[12]

A close reading of *Schmidt* supports our analysis that Congress intended dynamic jurisdictional parity when it enacted § 1348. First, *Schmidt* itself appears to have applied dynamic parity. As *Martinez* explains, "*Schmidt* did not base its decision ... on a comparison with corporate citizenship in 1948; rather, it compared national banks to corporations in the present-tense." 946 F.Supp.2d at 1020, 2013

WL 2237879, *9. For example, *Schmidt* noted that "while corporations ordinarily rank as citizens of at most 2 States, Wachovia, under the Court of Appeals' [branch office] rule, would be a citizen of 16 States." 546 U.S. at 317, 126 S.Ct. 941. If the Court viewed § 1348 as enacting static parity, however, its analysis would have read as follows: "while corporations ordinarily ranked as citizens *of only a single state in 1948,* Wachovia, under the Court of Appeals' branch office rule, would be a citizen of 16 states." *Schmidt's* analysis thus implicitly rejected static parity and the jurisdictional inequality it would establish between corporations and national banks.

Moreover, *Schmidt* rejected the branch office rule, which would have given national banks disadvantageously less access to the federal courts as compared to corporations. As the legislative history of § 1348 and its predecessor statutes show, however, the original purpose of jurisdictional parity was to eliminate the prior rule giving national banks advantageously more (i.e., automatic) access to the federal courts. (*See* Section III.B.1, above (discussing predecessor statutes eliminating national banks' automatic access to federal courts)). Citizenship based solely on a

10. *Schmidt* also reaffirmed the principle of parity in its discussion of venue: "this Court's reading of the venue provision in [*Citizens and Southern Nat. Bank v. Bougas,* 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977)] *effectively aligned* the treatment of national banks for venue purposes with the treatment of state banks and corporations.... By contrast, the Court of Appeals' decision in the instant case severely constricts national banks' access to diversity jurisdiction as compared to the access available to corporations generally." 546 U.S. at 316–17, 126 S.Ct. 941 (emphasis added).

11. Indeed, "imprecise parity" appears to be a contradiction in terms. The plain meaning of parity is "equality." Cambridge Dictionaries

Online, accessed July 30, 2013, <http://dictionary.cambridge.org/dictionary/american-english/parity?q=parity>.

12. Defendants similarly argue that § 1348 does not call for "precise" jurisdictional parity. (Opp. at 16). They point out that Congress deleted language expressly establishing parity in the 1882 statute more than a century ago. They also argue, albeit somewhat opaquely, that the 1911 revisions also demonstrate a departure from parity. As discussed at length above in Section III.B.1, however, the Supreme Court consistently explained that jurisdictional parity was the policy of § 1348's predecessor statutes even after Congress replaced express parity with the term "located."

national bank's main office would again give banks advantageously more access to the federal courts as compared to corporations, at least when a national bank's main office is located in a different state than its principal place of business, as here.

Finally, *Schmidt* underscored the need to interpret statutory language in light of the statute's purpose. While a national bank is located in any county or city where it maintained a branch office for purposes of a now-repealed venue statute, it is not similarly located for purposes of citizenship within the meaning of § 1348. *Schmidt,* 546 U.S. at 315–16, 126 S.Ct. 941 (citing *Citizens and Southern Nat. Bank v. Bougas,* 434 U.S. 35, 44–45, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977)). In particular, the Court noted that "venue 'is primarily a matter of choosing a convenient forum'" while "[s]ubject matter jurisdiction does not entail an assessment of convenience." *Id.* We have employed this form of purposive analysis. Our conclusion that Congress intended § 1348 to incorporate principal place of business citizenship for national banks is based on the stated purposes of § 1348 and § 1332(c)(1)—jurisdictional parity, protecting against bias toward outsiders, and preventing jurisdictional manipulation.

### 2. *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*

25 Defendants argue that we should follow *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC,* 653 F.3d 702 (8th Cir.2011), which held that a national bank is not a citizen of the state of its principal place of business under § 1348. *WMR* concluded that "[h]ad Congress wished to retain ju-

risdictional parity in 1958, it could have unequivocally done so. It did not, and consequently the concept no longer applies." 653 F.3d at 709. This analysis might have more force if the concept of jurisdictional parity had not been so ingrained in decades of consistent caselaw from the Supreme Court. The proper perspective is, if anything, the converse of *WMR's* reasoning. Given the settled understanding that jurisdictional parity is a Congressional goal that spanned decades, Congress's total silence on abrogating parity is a strong indication that Congress did not intend to disturb the status quo, especially where there is no intervening change of circumstances or policy that might explain any such marked departure. *See American Surety,* 133 F.2d at 162 (concluding that Congress would have plainly stated any intent to effect noteworthy departure from the general rule).

Next, pointing out that Congress did not enact principal place of business citizenship for corporations until 1958, *WMR* explained that "we will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption." 653 F.3d at 709.[13] First, *WMR* is incorrect that principal place of business was "unknown" as a jurisdictional concept in 1948. In fact, it had been used in the bankruptcy context since 1898. *See Royal Indem. Co. v. American Bond & Mortg. Co.,* 289 U.S. 165, 167–68, 53 S.Ct. 551, 77 L.Ed. 1100 (1933) (discussing "principal place of business" as part of the test for a bankruptcy court's "territorial jurisdiction" un-

---

**13.** Other cases have made a similar point. *See, e.g., Mireles v. Wells Fargo Bank, N.A.,* 845 F.Supp.2d 1034, 1060 (C.D.Cal.2012) (reasoning that "jurisdictional parity at the time [§ 1348] was passed was achieved by limiting a national bank's citizenship to a single location" and "[t]he concept that a

corporation was a citizen of the state where it had its principal place of business did not arise until 1958, when 28 U.S.C. § 1332(c)(1) was first enacted") (citing *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.,* 470 F.Supp.2d 312, 319 (S.D.N.Y.2006)).

der the Bankruptcy Act of 1898).[14] Second, this argument begs the question. To conclude that Congress did not intend to import a jurisdictional concept into § 1348 that did not exist for corporations in 1948, one must presume that Congress intended static parity, i.e., putting national banks on the same jurisdictional footing as corporations only as of 1948. Yet the very issue in dispute is whether Congress intended to enact static or dynamic parity in using the term "located" in § 1348. Therefore, we decline to adopt *WMR's* reasoning.

### 3. Wells Fargo's Other Arguments

Defendants argue that the Ninth Circuit would not use a national bank's principal place of business to establish citizenship. They cite *Lowdermilk v. U.S. Bank*, 479 F.3d 994, 997 (9th Cir.2007), which held that U.S. Bank is a citizen of Ohio "because its main office is located in that state" without considering U.S. Bank's principal place of business. We disagree. As *Rouse* correctly noted in rejecting this argument, "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed. The Court would risk error if it relied on assumptions that have gone unstated and unexamined." *Rouse v. Wachovia Mortg., FSB*, 2012 WL 174206, *10 (C.D.Cal.2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, —— U.S. ——,

131 S.Ct. 1436, 1448, 179 L.Ed.2d 523 (2011)).[15]

Defendants argue that a banking statute links the terms "main office" and "located," and we should therefore hold that a national bank is exclusively a citizen of the state where its main office is located. *See Valenzuela v. Wells Fargo*, Case No. EDCV 12–02149–VAP (DTBx), 2013 U.S. Dist. LEXIS 6608, *4–5 (C.D.Cal. January 15, 2013) (holding that "a national bank is a citizen of the state in which its main office is located, and only that state" based on a banking statute). In particular, Defendants point to 12 U.S.C. § 36(g)(3)(B) in the National Banking Act which provides that "[t]he term 'home State' means the State in which the main office of a national bank is located." 12 U.S.C. § 36(g)(3)(B). Hence, Defendants contend, the term "located" in § 1348 refers exclusively to a national bank's main office. (*See* Opp. at 18). We disagree.

First, § 36(g)(3)(B) defines the term "home state," not the term "located." This section also does not purport to define a national bank's citizenship for diversity purposes. Second, even if § 36(g)(3)(B) purported to define the term "located," *Schmidt* expressly held what the term "located" means in one statutory context, e.g., venue, does not necessarily control what it means in another statutory context, e.g., subject matter jurisdiction. 546 U.S. at 315–16, 126 S.Ct. 941. Rather, as we have done above, we must analyze the distinct

---

14. We note that "principal place of business" appears to have been a concept of personal jurisdiction rather than subject matter jurisdiction in the Bankruptcy Act of 1898 because it referred to *"territorial* jurisdiction." Today, "principal place of business" is a venue concept in bankruptcy. 28 U.S.C. § 1408; Nancy C. Dreher, et al., Bankruptcy Law Manual § 2:35 (2013) ("Bankruptcy Law Manual"); *cf.* Bankruptcy Law Manual § 2:2 (discussing exclusive federal subject matter jurisdiction over bankruptcy cases).

15. Defendants similarly argue that the Ninth Circuit "implicitly affirmed Wells Fargo's exclusive citizenship in South Dakota" in *Bates v. MERS*, 694 F.3d 1076 (9th Cir.2012). (Opp. at 19–20). *Bates* did not consider whether Wells Fargo's principal place of business could give rise to citizenship in California. Accordingly, we reject this argument for the same reason we reject Defendants' *Lowdermilk* argument.

context and purposes of the term in each statute. *See id.; see also Martinez,* 946 F.Supp.2d at 1017, 2013 WL 2237879, *6 (explaining that " § 1348 is found in the Judicial Code and Judiciary Act, not the National Bank Act; there is no compelling basis for using the National Bank Act as an interpretive tool in analyzing § 1348"). Accordingly, the fact that "located" may mean "main office" under the National Banking Act does not help us determine what "located" means in § 1348, a jurisdictional statute with completely different legislative and judicial histories and purposes.

Defendants also briefly argue that the Supreme Court has "historically left [the] application of the [principal place of business] test" to Congress. (Opp. at 19). They cite two cases, *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that a limited partnership is a citizen of every state of which a partner is a citizen) and *Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894 (9th Cir.2006) (holding that an LLC is a citizen of every state of which its owners and members are citizens). Citing *Carden, Johnson* noted "the Supreme Court's consistent refusal to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of corporations." 437 F.3d at 899.

We do not see how this principle is relevant here. No statute defines the citizenship of limited partnerships and LLCs. *See Johnson,* 437 F.3d at 899 (explaining that "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens"). By contrast, § 1348 defines the citizenship of national banks. Accordingly, our task is to interpret § 1348, which we have done above. In doing so, we have analyzed the extensive legislative and judicial history of juris-

dictional parity between national banks, on the one hand, and corporations and state banks, on the other. No similar principle of jurisdictional parity appears to exist for partnerships and LLCs. *Carden* and *Johnson* are thus inapposite.

Finally, Wells Fargo has argued before other courts, though not here, that the jurisdictional statute for federal savings associations, 12 U.S.C. § 1464(x), indicates Congress's intent that a national bank should have single citizenship according to the location of its main office. After the Supreme Court handed down *Schmidt,* Congress enacted 12 U.S.C. § 1464(x) in 2006, which states as follows: "In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office." *See* Pub. Law 109–351, 2006 S 2856.

We do not find persuasive the argument that § 1464(x) controls the outcome for national banks under § 1348. First, § 1464(x) does not use the term "located" and does not link that term to sole main office citizenship. Furthermore, Congress is presumed to know that *Schmidt* left open the question of principal place of business citizenship for national banks. In response to *Schmidt,* Congress could have expressly linked a national bank's citizenship to a federal savings association's, but it did not. Second, as discussed at length above, national banks have long been compared to corporations and state banks to determine the meaning of the term "located" in § 1348. There is no similar judicial background comparing national banks to federal savings associations. Nor is there any judicial recognition of jurisdictional parity between federal savings associations, on the one hand, and corporations

and state banks, on the other. Accordingly, § 1464(x) does not affect our analysis of Wells Fargo's citizenship under § 1348.

**IV. Conclusion**

In light of the foregoing, we conclude that for purposes of § 1348 a national bank is also located in the state of its principal place of business. Wells Fargo therefore is a citizen of California, and complete diversity does not exist in this case. Accordingly, Plaintiff's Motion to Remand is **GRANTED**. As we lack subject matter jurisdiction, we decline to rule on the pending Motion to Dismiss. This action is remanded to the state court from which it was removed. The Clerk shall effect such remand forthwith.

**IT IS SO ORDERED.**